GEGAN v. UNION TRUST CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 11, 1908.)

TRUSTS (§ 25*)—DECLARATION OF TRUST.

A declaration of a trust by deceased in favor of plaintiff as to certain bonds is not clearly shown, as is necessary, though he stated to others that either he would increase his legacy to her, which he did not do, or that he would give her some bonds, and later that he had given them to her so that she could get them if anything happened to him, and though after his death in his safety deposit box were found bonds connected by a rubber band with an envelope, indorsed "Belongs to G." (plaintiff), and containing papers of plaintiff.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 34; Dec. Dig. § 25.*]

Patterson, P. J., and McLaughlin, J., dissenting.          .    ´

Appeal from Special Term, New York County.

Action by Mary D. Gegan against the Union Trust Company of New York, as executor of John H. Drake, deceased. From a judgment dismissing the complaint on the merits, entered on a decision after trial, plaintiff appeals. Affirmed.

See, also, 120 App. Div. 382, 105 N. Y. Supp. 243.

Argued before PATTERSON, P. J., and McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Franklin Bartlett, for appellant.

Perry D. Trafford, for respondent.

HOUGHTON, J. The action is brought to obtain an adjudication that the defendant's testator in his lifetime declared and executed a trust in favor of plaintiff in 18 specified railroad bonds, and for the delivery of such bonds to the plaintiff. The trial resulted in a dismissal of the complaint upon the merits, and we think properly so. The plaintiff failed to produce the clear and satisfactory evidence which the law requires to establish a gift inter vivos, or that the defendant's testator made himself a trustee of the bonds for her.

John H. Drake, the defendant's testator, was a contractor with large business interests in the various parts of the country. His legal residence and that of his family was in the state of New York, but for several years before his death he maintained a household near the work in which he was engaged, principally, however, in the city of Philadelphia, Pa. For many years the plaintiff was his housekeeper at whatever place he installed a home. He had built under contract a section of the Charleston, Clendennin & Sutton Railroad, and in December, 1895, and in January, 1896, he had purchased or taken in payment for work 29 $1,000 bonds of that road, issues apparently as of April 1, 1896, the first interest coupon upon which appears to have been due October 1st of that year. Prior to his death on October 20,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

1896. he had sold 2 of these bonds to his brother William, and pledged 9 as collateral for a loan, leaving the 18 bonds which are the subject of controversy. His aggregate property was of considerable magnitude, and in February, 1894, he had executed a will in which he gave to his sister the use of $25,000 during her life, and to the plaintiff the same amount, the principal in each instance to revert to his estate upon the death of the life beneficiary. The bulk of his estate he gave to his wife and three children. Apparently in June, 1894, the plaintiff obtained title to a house on North Seventeenth street in the city of Philadelphia, whether through the deceased or not does not appear, but it seems that on the 25th of that month the deceased paid off a mortgage of $2,200 thereon. The deceased died at this house, and it was there he made his home when in Philadelphia. At times he was addicted to the excessive use of stimulants which made him violently ill, and the plaintiff nursed him in such sicknesses, for which the testator often expressed gratitude.

The testimony discloses that in the spring and summer of 1896 the testator was solicitous for the welfare of the plaintiff, and often expressed an intention either to change his will and give her the use of a greater sum or to give her 20 of these railroad bonds. The brother of the deceased testified that he told him that he thought that plaintiff ought to have as large an income as his sister, which was $1,500 a year, and that, if he did not rewrite his will and give her the income of $50,000, he would leave her enough railroad bonds to make up that equivalent, and that he would see that it was properly done, and finally told him that he had (or would) fix it beyond a doubt, and on one occasion, when collateral for a loan was spoken of, the deceased said he could not pledge the plaintiff's bonds. To his partner and other witnesses he said that he had made up his mind to give the plaintiff 20 of the specified railroad bonds, and that he had given them to her, and that she could get them at any time if anything happened to him, and the cook of the household testified that as early as April of that year he told her he had 18 or 20 of these bonds locked up in his safe in the West End Trust Company for the plaintiff. The testator sold 2 bonds after that date, however, leaving only the 18.

The testator did not change his will, and there is no proof of any manual delivery to the plaintiff of the bonds in controversy. For some years prior to his death, he had had a safety deposit box in the West End Trust Company of Philadelphia, to which he alone had access. On his death there was found in this box, together with other bonds and securities concededly belonging to the testator, the 18 bonds in controversy. There was an envelope, unsealed, in which was inclosed a title policy transferred to the plaintiff as owner, and what is termed a perpetual fire insurance policy transferred to the plaintiff as owner, and a receipt for the payment of a $2,200 mortgage and interest, all relating to the premises, owned by the plaintiff, No. 2211 North Seventeenth street, Philadelphia. On the outside of this envelope, in the handwriting of the testator, were the words: "Belongs to Mary D. Gegan." The 18 bonds were found, according to the stipulation made upon the trial, "with this envelope superimposed, con-

nected by a rubber band." It is upon this evidence, and the fact that the bonds were found connected by a rubber band with this envelope marked by the deceased as it was, that the plaintiff very largely relies. The written words were used manifestly with reference to the envelope and its contents only. The word "belongs" is singular and presumably refers to one thing, to wit, the envelope and what is contained. It is possible that the testator placed the envelope on top of the bonds and put the band around them, and assumed that the admission and declaration written by him was sufficient to prove ownership, but we think it fell short of doing so. Had the testator put a wrapper around the bonds and placed the same words on the package, quite a different question would have been presented. Presumptively the words written related only to the envelope and its contents, and they did not necessarily refer to the bonds notwithstanding they and the envelope were bound together in the same package. Besides, the witnesses were testifying years after the occurrence, and some of the statements are quite open to suspicion. Very likely the testator intended to do something for the plaintiff more than he had done by his will, but he failed to do what was necessary to make a gift or to declare himself a trustee and holder of the bonds for plaintiff.

No significance is to be attached to the fact that the plaintiff had possession of the bunch of keys after testator's death upon which was the key to the safety deposit box. She was his confidential nurse, and her possession was quite natural. Besides, she could not obtain access to the box even if she had a key, for it was rented in testator's name only. Nor is significance to be attached to the fact that the October coupons of these particular bonds were not cut. The testator was ill when they would naturally be cut off, and other bonds in the same box had October coupons attached. The brother testified that he deposited certain October coupons for the deceased, but the bank books show no such thing.

The transaction occurred in the state of Pennsylvania and the law of that state is pleaded, and the case of Girard Trust Co. v. Miller, 156 Pa. 579, 27 Atl. 662, was offered in evidence. From this decision it appears that the law in that state is like our own, to wit, that equity will not aid an imperfect gift or declaration of trust, or transform an imperfect gift into a declaration of trust. The opinions in Smith's Estate, 144 Pa. 428, 22 Atl. 916, 27 Am. St. Rep. 641, and in Eshbach's Estate, 197 Pa. 153, 46 Atl. 905, also called to the attention of the learned trial court, while not putting the propositions so pointedly, are of the same tenor as the decision of our Court of Appeals in Young v. Young, 80 N. Y. 422, 36 Am. Rep. 634, where it is said:

"Although it is not necessary that the declaration of trust be in terms explicit, the donor must have evinced by acts which admit of no other interpretation that such legal right as he retains is held by him as trustee for the donee."

The plaintiff failed to produce proof of this character, and her complaint was properly dismissed.

The judgment should be affirmed, with costs.

CLARKE and SCOTT, JJ., concur.

McLAUGHLIN, J. (dissenting). At the time of the death of the testator, all his personal estate according to the findings was in a safe deposit box, of which the plaintiff had the key. There was also in this box an envelope containing a canceled bond, secured by mortgage, and certain insurance policies which it is conceded belonged to the plaintiff and related to a parcel of real estate owned by her. Fastened to the envelope by a rubber band were 18 $1,000 bonds of the Charleston, Clendennin & Sutton Railroad Company. The envelope bore two indorsements—one in ink, not in the handwriting of the testator, describing the bond and mortgage, and the other in pencil, which was in the testator's handwriting, "Belongs to Mary D. Gegan." The plaintiff claims these bonds and this action was brought to impress a trust in her favor upon them. After a trial at Special Term, the complaint was dismissed upon the merits, and the plaintiff appeals.

I am of the opinion the court erred in dismissing the complaint. In Govin v. De Miranda, 140 N. Y. 474, 35 N. E. 626, there was found in a box in a safe at the testator's office a sealed envelope with the following indorsement:

"A declaration in favor of Emilia, Felix, Guillermina Govin and Luz Diaz y Sanchez. * * *"

In the envelope was a paper signed by the testator, which, so far as material to the question here under consideration, read:

"There is besides in my safe a parcel containing $29,000 in bonds of the Iowa division railroad and out of them $10,000 belong to Luz Diaz y Sanchez, * * * and the balance belongs to the aforesaid Emilia, Felix and Guillermina, share and share alike. No person shall have the right to oppose this declaration, because it is founded on conscience and justice. I reserve this money only for what I may consider proper."

In the same box were found 38 bonds of the Chicago, Burlington & Quincy Railroad Company, Iowa Division, and the plaintiffs brought an action to recover 19 of these bonds. The court held that they were entitled to recover, saying:

"The bonds were in his possession, as one must infer, under some agency or possibly upon some trust, under which he had authority to convert them and apply the proceeds consistently with the ownership of the bonds by the plaintiffs. It cannot be supposed that, after declaring that the bonds belonged to the plaintiffs, as matter of conscience and justice he reserved the right to dispose of them for his own benefit as he pleased. The reservation must be made consistent with the prior declaration of ownership, if possible; and that it can be is quite apparent. Whatever power or agency he reserved to himself in the bonds, to be exercised for the benefit of the plaintiffs, was revoked by his death; the reserved power never having been exercised. We think, therefore, that the paper furnishes, in the absence of any evidence explaining or contradicting it, satisfactory proof of the ownership of the bonds mentioned therein by the plaintiffs."

In Matter of Gallagher, 1 App. Div. 65, 36 N. Y. Supp. 1081, there was found among the testator's papers one addressed to the executor of his will, which read:

"You will pay Phillip E. Gallagher, five hundred dollars ($500) I owe him that. He is my old friend and may be too modest to put in a claim."

The executors refused to pay, and thereupon action was brought. At the trial the complaint was dismissed and the judgment affirmed

by this court, but on appeal the same was reversed (153 N. Y. 364, 47 N. E. 450), the court saying:

"The referee refused to give any force to the memorandum, either as an obligation or as constituting an admission by the decedent of any liability to the claimant. He held that it did not create an obligation, because it was never delivered, and that it could not be regarded as an admission because the decedent retained it in his possession. He was clearly right upon the first question, but erred in respect to the second. It was an admission of a legal enforceable liability to the claimant for the sum stated therein. * * * As an admission it was competent evidence, although the testator retained it in his possession."

And in Starbuck v. Farmers' Loan & Trust Co., 28 App. Div. 272, 51 N. Y. Supp. 58, defendant's testator, who was a shipowner, had contracted for the building of an iron sailing ship. While the ship was in the course of construction, in the year 1882, he wrote to the plaintiff, his brother, as follows:

"In conformity with our verbal understanding, this is to certify that I agree to carry for your a/c one-eighth interest in the new iron sailing ship * * * at the rate of six per cent. per annum, the said one eighth interest to be transferred to you when paid for, either from the earnings of said ship or otherwise."

After the death of the testator in 1896, plaintiff claimed that his executors should account for the earnings of the ship and transfer one-eighth interest to him. Upon the trial of the action a witness testified that the decedent had stated to him:

"He was going to put an eighth down for Sidney Starbuck and myself, an eighth each, and when the ship paid for it, with interest and insurance, it would be ours."

Plaintiff also offered to prove, by a witness, that decedent had after the letter was written said that plaintiff owned an eighth of the ship, but this was excluded on defendant's objection. The complaint was dismissed, but this court reversed the judgment entered thereon and ordered a new trial. Mr. Justice O'Brien, who delivered the opinion, said:

"Although, as stated, we must assume that the writing was delivered because produced by the plaintiff, we should not be inclined, if it stood alone, to regard it as a valid declaration of trust. But if, in addition to the writing, we take the subsequent declaration of the testator that the plaintiff owned a one-eighth interest in the vessel, which declaration the plaintiff offered to prove, but which was excluded under objection, then we think that the principles enunciated in another of the many cases growing out of the litigations between Govin and De Miranda, 140 N. Y. 474, 35 N. E. 626, would be controlling."

See, also, Matter of Schinzel, decided at the June term, 1908 (affirmed without opinion); Matter of Farmers' Loan & Trust Co., 47 App. Div. 448, 62 N. Y. Supp. 359; Rand v. Whipple, 71 App. Div. 62, 75 N. Y. Supp. 740.

If the authorities cited are to be followed, then it seems to me the plaintiff was entitled to recover. Here the testator had, several months prior to his death, stated to his brother that he intended to give to the plaintiff certain bonds, and thereafter stated to his partner that he had given them to her, and at another time, when a question arose

about putting the bonds up as collateral, he stated that he could not do so without using "Miss Gegan's bonds, and he did not propose to do that." When these declarations are supplemented by proof that the plaintiff actually selected from his other securities the bonds in question and put them in a package with papers which concededly belonged to the plaintiff, and wrote on the outside of the package "Belongs to Mary D. Gegan," it seems to me a case was made out equally as strong as any of the authorities cited.

It is not seriously questioned but that the testator did what he supposed was necessary to lodge the title to the bonds in the plaintiff, but a majority of the court is of the opinion that the evidence does not establish a gift inter vivos, and the written declaration is insufficient to establish a trust. The written declaration, supplemented by decedent's oral declarations and his act in selecting the bonds, is sufficient to establish such interest in the plaintiff as enables her to recover the bonds or the proceeds thereof, and this whether the act of the decedent be considered a gift of the bonds to her or constituting himself a trustee for her benefit. In reaching this conclusion I do not mean to hold that the rules relating to gifts or trusts should be relaxed in any way. Such rules are designed to prevent the allowance of fraudulent and fictitious claims, but whenever the court can see, as I can here, that the claim is an honest one, then technical rules ought not to be permitted to work injustice.

The judgment appealed from, therefore, should be reversed and a new trial ordered, with costs to appellant to abide event.

PATTERSON, P. J., concurs.