Let an order be prepared accordingly.

---

### In re VON BERNUTH'S ESTATE.

#### (Surrogate's Court, New York County. March 1, 1913.)

1. TAXATION (§ 879*) — INHERITANCE TAX — TRANSFERS SUBJECT — GIFTS IN CONTEMPLATION OF DEATH.

A husband and wife deposited money belonging to the wife with a trust company, at the same time signing a statement declaring that they were joint owners of the money; that future deposits made by either of them should be their joint property; that either one, before or after the death of the other, might sign drafts or orders on the deposit and receive the money thereon; and that at the death of either the survivor should take absolute and single ownership of the balance then due. A few days before the wife's death, but at a time when she had no reason to apprehend an early death, she asked the husband to draw $15,000 and use it in the purchase of an automobile and stock securities for himself. He did withdraw this amount and placed it to his personal account. *Held*, that while as against the bank the husband had the right to draw the money on deposit, and upon the wife's death acquired the absolute right of ownership to the amount then on deposit, the wife did not, in the absence of any contract or agreement with the husband, divest herself of her ownership of the fund during her life; and hence the balance on deposit at her death was subject to the tax imposed by the Transfer Tax Statute (Consol. Laws 1909, c. 60, §§ 220–245) on gifts intended to take effect at or after death.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. § 879.*]

2. TAXATION (§ 879*)—INHERITANCE TAX—TRANSFERS SUBJECT—GIFTS IN CONTEMPLATION OF DEATH.

The $15,000 withdrawn by the husband in the wife's lifetime was not a gift made in contemplation of death, and was not taxable.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. § 879.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. GIFTS (§ 18*)—"GIFT INTER VIVOS"—ESSENTIALS.

　　To make a valid "gift inter vivos," the donor must divest herself of dominion over the subject of the gift and deliver it to the donee.

　　[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 29–33; Dec. Dig. § 18.*

　　For other definitions, see Words and Phrases, vol. 4, pp. 3091–3093; vol. 8, p. 7671.]

Proceeding to assess the transfer tax on the estate of Caroline De Forest Von Bernuth, deceased. From an order of the appraiser assessing the tax, the executor appeals. Reversed and report remitted to the appraiser for correction.

John Larkin, of New York City, for petitioner.
Thomas E. Rush, of New York City, for state comptroller.

FOWLER, S. [1, 2] This appeal is taken by the executor from the order assessing a tax upon the decedent's estate. In June, 1912, the decedent and her husband deposited a sum of money with the Title Guarantee & Trust Company, and at the time of making the deposit they signed a statement declaring that they were joint owners of the money then deposited, and that any future deposits made by either of them should be their joint property—

"that is either one of us before or after the death of the other may sign drafts or orders on said account and receive the money thereon before or after the death of the other, and at the death of either the survivor shall take absolute and single ownership of the balance then due the account."

From the affidavits submitted to the appraiser it appears that none of the husband's money was deposited in this account, but that the deposit consisted entirely of decedent's money. About five days before the death of decedent she asked her husband to draw $15,000 from the account and to use this sum in purchasing for himself an automobile and stock securities. The husband drew the said amount of $15,000 and placed it in his personal account. At the time of decedent's death there was a balance of $2,034.58 on deposit in the joint account. The appraiser included this amount, together with the $15,000 deposited in the husband's personal account, in the taxable assets of decedent's estate. The executor contends that this was error; that neither the $2,034.58 nor the $15,000 is subject to a transfer tax as part of decedent's estate. The transfer tax statute provides that a tax shall be imposed when the property is transferred by will, by the intestate laws, or as a gift given in contemplation of death, or intended to take effect at or after death. If the transfer is effected in any other way it is without the statute, and therefore not subject to a tax. The decisions of the courts of this state upon the question of the taxability of the interest of the survivor in a joint account are not uniform. In the Matter of Stebbins, 52 Misc. Rep. 438, 103 N. Y. Supp. 563, it appeared that the money deposited belonged to the decedent, and that the deposit was made "Julia A. and H. H. Stebbins, either or the survivor of them may draw." It was held that the money on deposit at the death of the decedent was not subject to a transfer tax. In the Matter of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
　143 N.Y.S.—43

Kline, 65 Misc. Rep. 446, 121 N. Y. Supp. 1090, the money was deposited in the joint names of decedent and his wife. Part of the money belonged to each at the time the deposit was made. The account was payable to either or the survivor. The court held that such portion of the money deposited as did not belong to the survivor at the time the deposit was made was taxable. In the Matter of Spring, 75 Misc. Rep. 586, 136 N. Y. Supp. 174, mortgages were assigned to the decedent and her daughter by instruments which contained provisions that the survivor of the two assignees should become the absolute owner of the bonds and mortgages, and that neither should have power to affect the rights of the last survivor. It was held that one-half of the value of the bonds and mortgages was taxable upon the death of the decedent. To the same effect is Matter of Pitou, 79 Misc. Rep. 384, 140 N. Y. Supp. 919. While joint ownership of personal property is now recognized by the courts (Kelly v. Beers, 194 N. Y. 49, 86 N. E. 980, 128 Am. St. Rep. 543) and by the statute law of the state (section 144 of the Banking Law [Consol. Laws 1909]), the respective rights and interests of the joint owners do not seem to be definitely fixed. As a matter of fact the expression "joint owners" when applied to personal property is not definitely descriptive; it conveys no well-defined meaning as to the respective rights of the owners of the property. For instance, in the matter under consideration all the money deposited with the trust company belonged to the decedent at the time the deposit was made. As soon as the money was deposited the decedent and her husband became joint owners of it. But immediately thereafter, and while the so-called joint ownership continued, the husband could draw the entire sum so deposited and use it for any purpose he desired. In other words, as soon as he drew it from the bank it became his individual property. It was joint property while it was in the bank; it became individual property as soon as it was drawn out. But if there was joint ownership of the deposit, each of the owners would have some right to the property, and this would be inconsistent with an absolute right on the part of either to dispose of all the property. Therefore it would appear that the expression is neither accurate nor definite. The deposit of money under circumstances similar to those in this matter would seem to constitute, not a joint ownership of the property, but a right on the part of either to draw any part of the money on deposit, with the absolute right in the survivor to the amount on deposit at the death of the other party to the arrangement. The right of the survivor to the amount on deposit is settled by authority. Kelly v. Beers, supra. As none of the property deposited with the trust company belonged to decedent's husband before the deposit was made, his right to draw any part of it or to take possession of what remained after the death of his wife must have been derived, either from a contract with the decedent, or through a gift from her. There is no evidence of any contractual obligation assumed by the husband as a consideration for obtaining the right to draw the money deposited by the decedent. This right must therefore have been a gift from the decedent.

[3] There was not, however, a valid gift inter vivos of all the

money on deposit, because in order to make such a gift it would be necessary that the donor should divest herself of dominion over the subject of the gift and deliver it to the donee. Gegan v. Union Trust Co., 129 App. Div. 184, 113 N. Y. Supp. 595, affirmed 198 N. Y. 541, 92 N. E. 1085. But the decedent did not divest herself of dominion over the property; she reserved the right to draw all of it and use it for her own purposes. The husband had, so far as the bank was concerned, the same right as the decedent to draw all the money on deposit, and the bank could not refuse payment to him. Whether the decedent could compel him to repay to her any sum withdrawn by him from the bank would depend upon the terms of the contract or agreement entered into by the parties at the time the deposit was made. The appraiser's report does not contain any evidence of such a contract or agreement. The declaration of joint ownership filed with the bank would justify the bank in paying the entire deposit to either the decedent or her husband, but I am inclined to think that it did not of itself divest the decedent of the right of ownership in the fund, and that she did not intend by such declaration that her husband could withdraw the entire amount on deposit and use it for his own purposes. The fact that she did not make a gift of the entire amount so deposited to her husband indicates that she did not desire to relinquish her right of ownership to the property. To the right which the husband had during the lifetime of his wife to draw any part of the money from the bank was added, upon her death, the absolute right of ownership to the amount then on deposit. This latter right he did not have before and could not have until her death. It was therefore a gift intended to take effect at her death within the meaning of the transfer tax statute (Consol. Laws 1909, c. 60, §§ 220–245), and the amount on deposit in the so-called joint account at the date of decedent's death is subject to a tax. That the deposit was made in the particular form above described for purposes of convenience rather than with the intention of conferring the right of ownership upon the husband is apparent from the affidavit made by her husband, in which it is stated that about five days before decedent's death she asked him to draw $15,000 from the bank and to use it in the purchase of an automobile and stock securities for himself. If it was understood between them that he had an equal right with her to the money on deposit, it would not be necessary for her to authorize him to draw $15,000 and use it for the purchase of property that was to belong to him. The $15,000 was withdrawn from the joint account by decedent's husband before her death and was deposited by him in his personal account. It was therefore a valid gift from the decedent to her husband. While it appears that this gift was made five days before decedent's death, it is alleged that at the time of making the gift she had no reason to apprehend her early demise, and as this allegation was not contradicted by the State Comptroller it cannot be held that the gift was made in contemplation of death. It is therefore exempt from taxation. The order fixing tax will be reversed, and the appraiser's report remitted to him for correction as indicated.