ANNA C. MILLER, Respondent, *v.* FLORENCE SILVERMAN, as Administratrix, etc., of EDWARD A. NEW, Deceased, Appellant.

Second Department, November 17, 1927.

**Executors and administrators — claims against estate — securities were found in safe deposit box with indorsement in writing that they belonged to plaintiff — securities were purchased by decedent in ordinary course — proof insufficient to show title in plaintiff.**

The plaintiff contends that certain securities found in a safe deposit box in the possession of the decedent belonged to her, and bases her contention on the fact that there was an indorsement in the handwriting of the decedent on the envelopes containing the securities to the effect that they belonged to the plaintiff. In view of the evidence that the securities were purchased by the decedent in the ordinary course of business and were paid for by him, that he was possessed of sufficient wealth to have made the investments represented by the securities, and that he alone had access to the safe deposit box, the proof is insufficient to sustain plaintiff's contention that the title to the securities is in her.

APPEAL by the defendant, Florence Silverman, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Queens on the 4th day of March, 1927, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 25th day of February, 1927, denying defendant's motion for a new trial made upon the minutes.

*Clarence De Witt Rogers*, for the appellant.

*Harry Bijur*, for the respondent.

KAPPER, J.   Edward A. New, defendant's intestate, died August 24, 1926.   In his safe deposit box in the safe deposit vault of the Manufacturers Trust Company there was found after his death a number of securities consisting of stock certificates and bonds. He was the lessee of the safe deposit box and there was a concession that he had the sole right of access thereto.   The bonds were respectively three Tennessee Electric and four Baltimore and Ohio Railroad of an agreed aggregate value of approximately $7,500, the remainder of the securities being certificates of shares of stocks in various corporations, the total value of the stocks and bonds being conceded to be $53,584.75.   The certificates of stock were inclosed in an envelope with pencil entries on the outside indicating what the stocks were and the words, " All in envelope belong to Anna C. Miller."   Inside of the envelope was a slip of paper on which was written: " Whatever is in this envelope belongs to Miss

Anna C. Miller." This slip contained the signature of the decedent, viz., " Edward A. New." The bonds appear to have been in two separate packages, each package having a rubber band holding the bonds together, and underneath the rubber band of each package was a slip of paper, in the handwriting of the decedent, reading respectively, " These bonds of B. & O. belong to Anna C. Miller," and " These bonds Tenn. Elect. belong to Anna C. Miller," each of these two latter slips being signed, " Edw. A. New." There were also in the safe deposit box two small envelopes containing some gold pieces amounting to approximately $40, one of them having the words " From Anna C. Miller " on it, and the other appearing to be accompanied by what was characterized as a " season's greeting card " with a $10 gold piece and with the words written thereon, " From Eddie to Anna." This was the entire proof on behalf of the plaintiff upon which she predicated a claim of ownership to all of the stocks and bonds.

Besides proof of the decedent's hiring of and sole right of access to the safe deposit box, the testimony adduced on behalf of the defendant showed that all of the stock certificates stood at the time of his death in the name of the decedent, unindorsed, with the exception of the bonds which were payable to bearer and to which interest coupons were attached. Further exhibits show the decedent to have been the purchaser of these stocks and bonds, and that his banks had made the purchases for him and had charged his account therewith. The plaintiff conceded that the decedent's check books and bank accounts showed that his account had bought and paid for all of these securities, and that all dividends on the stocks and interest payments on the bonds were received by the decedent and deposited to his account and credit in his banks. There is no dispute that the decedent was possessed of sufficient wealth to have made the investments in question.

On the foregoing both sides asked for a directed verdict, the learned trial court thereupon directing a verdict for the plaintiff upon the authority of *Govin* v. *de Miranda* (140 N. Y. 474). The plaintiff's complaint and case proceed upon the theory that she was and is " the owner and entitled to the immediate possession " of the stock and bonds of which the intestate, at his death, " was in possession," and that the defendant administratrix, after due demand, refused their surrender to plaintiff and " wrongfully detains same." There was an intimation advanced by plaintiff's counsel on the trial that the deposit by the decedent of the stock dividends in his bank was " indicative of a trusteeship." That theory of a trust was, however, abandoned (if it may be regarded as having been asserted), and the plaintiff stands firmly upon the proposition

that she was and is the owner of the securities. Of course, there can be no claim predicated upon the idea of a gift, nor would the evidence permit the finding of the creation of a trust. As was said by Judge RAPALLO in *Young* v. *Young* (80 N. Y. 422, 437): " It is well settled that equity will not interpose to perfect a defective gift or voluntary settlement made without consideration. If legally made, it will be upheld, but it must stand as made, or not at all. When, therefore, it is found that the gift which the deceased attempted to make failed to take effect for want of delivery, or a sufficient transfer, and it is sought to supply this defect and carry out the intent of the donor by declaring a trust which he did not himself declare, we are encountered by the rule above referred to. * * * It is established as unquestionable law that a court of equity cannot by its authority render that gift perfect which the donor has left imperfect, and cannot convert an imperfect gift into a declaration of trust, merely on account of that imperfection."

If any presumption of plaintiff's ownership arose by reason of the written declarations of the decedent that the securities " belong " to her, it seems to me that an equally strong presumption offsetting the plaintiff's claim and, indeed, destructive of it, arose from the acts of the decedent bearing all the earmarks of sole and exclusive ownership and control of the securities in him. The proof shows that these stocks and bonds were bought and paid for by the decedent as in the ordinary course of business or every day transactions. This was further fortified by the concession of the receipt by the decedent and the deposit in his own bank account of all stock dividends and bond coupon interest. As before stated, all of the stocks were in the name of the decedent and upon their face showed him to be the owner thereof in so far as any indicia of title was concerned. A stock certificate, issued by a corporation having power so to issue, is a continuing affirmation of the ownership of the specified amount of stock by the person designated therein, or his assignee, until it is withdrawn in some manner recognized by law. (*Holbrook* v. *New Jersey Zinc Co.*, 57 N. Y. 616.) And as to the bonds, the holding thereof in the decedent's safe deposit box and the receipt by him and the crediting of his account by deposit in his banks of the interest, plainly imported his ownership thereof. (See *Matter of Crawford*, 113 N. Y. 560, 565.) So strong is the presumption of ownership in the holder of the bonds who acted with regard to them as is here conceded, that even where the purchaser of such bonds afterwards directed his banker to have them registered in the name of another, which was done but not accompanied by delivery to such other person, the

circumstances were held to fall short of a gift despite an apparent intention to make a gift, and that the purchaser of the bonds must be regarded as the owner at the time of his death. (*Matter of Crawford, supra.*)

Two cases seem to me to be decisive against the plaintiff's claim.

In *Beck* v. *Staudt* (149 App. Div. 35; affd., 208 N. Y. 566) the syllabus in the Appellate Division report states the following holding: " The fact that a testator before his death placed certain unregistered bonds in an envelope, across the face of which he wrote, ' The property of Miss Lizzie Beck, 842 Forest Avenue, N. Y.,' and placed the envelope in his safe deposit box to which he alone had access, does not establish a gift of the bonds to the person whose name appears on the envelope."

And MILLER, J., writing for an unanimous court (p. 36), said: " In this case the established facts are that the testator was himself the owner of the bonds, and that he put them in an envelope, wrote across the face of it the words first-above quoted, and deposited them in his safe deposit box to which no one else had access. Concededly, the essential element of delivery to constitute a gift was wanting. The court found, what the surrounding circumstances indicate was the fact, that the testator intended his declaration to speak only from his death. He doubtless supposed that he could thus make a testamentary disposition, but there is nothing to suggest that he intended a trust, and the courts should not defeat the Statute of Wills by constructing trusts. This case is not distinguishable from *Gegan* v. *Union Trust Co.* (129 App. Div. 184; affd., 198 N. Y. 541), except that there was evidence in that case tending to indicate that the testator supposed that the attempted gift had become effectual during his lifetime. The grounds upon which the learned counsel for the appellant attempts to distinguish that case appear to us to be altogether too unsubstantial to justify the attempted distinction."

In *Gegan* v. *Union Trust Co.* (129 App. Div. 184; affd., 198 N. Y. 541), and which is referred to by Mr. Justice MILLER in the *Beck* case, it appeared that the plaintiff, who had been housekeeper for a testator during his lifetime, brought action against his executors to establish a gift of bonds *inter vivos* or a trust thereof for her benefit. It appeared that the testator had left her a legacy, and during his lifetime had expressed an intention to increase it, but had not done so; that he had stated to third persons that he intended to leave her certain bonds; that he had given them to her, and that she could get them at any time if anything happened to him. After the testator's death the bonds were found in his safe deposit box attached by a rubber band to an envelope con-

taining papers concededly owned by the plaintiff and indorsed by the deceased in writing as belonging to her. And it was held that the evidence was insufficient to establish a gift of the bonds, or that the decedent made himself a trustee thereof for the benefit of the plaintiff.

In the *Govin Case* (*supra*), upon which the learned trial court placed his determination, the written declaration found in the decedent's safe deposit box that the bonds there in question belonged to the plaintiffs was the sole proof in the case. Judge EARL (p. 477) said: " It does not appear in this action what relationship, if any, the plaintiffs bore to the testator, and no proof was given upon the trial that at the time of the execution of the paper, or at any time prior thereto, the testator owned the bonds mentioned therein. The case depends entirely upon the force and effect to be given to that paper as evidence, and, we think, it shows that nineteen of these bonds belonged to the plaintiffs. They were found in his safe, and there is the unqualified declaration that they belonged to them. We must infer from that language that they came to the ownership of the plaintiffs in some legal way — by purchase or gift from some one; and if there was nothing else in the paper qualifying the declaration no one would dispute that it furnished absolute evidence of their ownership of the bonds." In so far as concerns relationship, the case at bar is equally barren with that of the *Govin* case, no proof whatever being offered by either side tending in any wise to indicate this subject. But the sharp distinction, to my mind, between the present case and the *Govin* case lies in the fact that there there was no proof of testator's ownership of the bonds in suit, while here, as shown, the testimony of decedent's ownership was comprehensive and complete.

In my opinion, the case was erroneously decided below, and the judgment entered upon the verdict directed for the plaintiff should be reversed upon the law and the facts, with costs, and the complaint should be dismissed, with costs. In view of this disposition, the appeal from the order denying the motion for a new trial should be dismissed.

YOUNG, RICH, LAZANSKY and HAGARTY, JJ., concur.

Judgment entered upon verdict directed for plaintiff reversed upon the law and the facts, with costs, and complaint dismissed, with costs, in accordance with opinion. In view of this disposition, the appeal from the order denying the motion for a new trial is dismissed.