## In the Matter of the Estate of RAY KESSLER, Deceased.

Surrogate's Court, New York County, January 9, 1940.

*Waldman & Waldman* [*Irvin Waldman* of counsel], for the executrix.

*I. Louis Friedman,* for the coexecutor, respondent.

*Steckler, Hoffman & Steckler,* for Helen B. Strulson.

DELEHANTY, S.   In this consolidated accounting and removal proceeding a coexecutor filed objections to the account of the executrix on various grounds.   The principal question presented by the executor's objections is whether $15,000 in par value of government bonds and the income due at the date of death of deceased and accruing thereon since constitute an asset of this estate.   The accounting executrix claims to be the owner of these bonds by *inter vivos* gift from deceased.   She relies chiefly for support of her claim upon the fact that the bonds at the date of death of deceased were in a safe deposit box rented by the executrix in her own name and upon certain slips of paper concededly in the writing of deceased which are in evidence as accountant's Exhibits 1-a, b, c and d. It is conceded that the bonds were purchased by deceased wholly with her own money and that from the date of purchase and until her death deceased enjoyed the whole of the income thereon.   It is further conceded that when the bonds were originally removed from a safe deposit box rented by deceased to a box rented in the name of her daughter, the executrix, there was given to deceased a right of access to the box and deceased actually exercised that right. It is conceded further that when the box originally rented in the name of the executrix was closed and the bonds removed to a second box in the name of the executrix there again was given to deceased a right of access which continued to be operative until deceased's death.   It is conceded that at deceased's death the bonds were in this box to which deceased had access.

The writings which are in evidence as accountant's Exhibits 1-a, b, c and d were produced by the executrix.   Only her testimony is offered to show that these papers ever were in the safe deposit box

simultaneously with the presence therein of the bonds in controversy. The sheets numbered accountant's Exhibits 1-a, b and c seem from their general appearance to have been written at the same time. The date of this writing probably was September 23, 1935, since that date is on the first of these three sheets. Deceased died September 20, 1938. The paper writing which is in evidence as accountant's Exhibit 1-d is undated. Apparently it was written sometime between September, 1935, and September, 1938.

Accountant's Exhibits 1-a, b and c state:

" Sept. 23 1935

the contents of this box is yours don't breathe to anyone. liberty bonds. 17.000. my pin bracelet give single stones Natilies ring is in also Pa watch. cut coupons every 6 months. you pay $5.50 for this Valt every year Sept. 28 be very carefull there also banks books in here in trust for you baby & one for Natilee. dont tell her right away. take your time, as she spends quick. she will get a little with you from other vault 106 st Bway. I saved all my life so please be careful. as you will need it when you grow older. dont even tell Perry. good luck your dearest mother

the rest of the stuff is in 144 st

106 st

rent of this vault is due Sept of every year. pay so you dont get the mail sent to you if you change valt. be carefull dont drop anything — dont let anyone see you. one cant be careful enough."

The paper which is in evidence as accountant's Exhibit 1-d says:

" in this Valt there is 15 thousand dol Bonds — 1 for 5000.00 & ten for 1,000.00 each makes 15 thousand also 3 books 1 for you S. 1 for Nat 1 for Joyce. in different Banks also stray stones Pa watch & my pin. be nice to Natilee please dont let any one know this even Perry. take good care as you are getting older. beware love Ma."

It is to be noted that the first paper refers to $17,000 worth of Liberty bonds and that the fourth sheet refers to eleven bonds only, of which one is for $5,000 and the other ten for $1,000 each — a total of $15,000. It is to be noted that each of the writings concerns itself with property other than the bonds. Each of the writings refers also to benefits to accrue to others which would not operate as such until deceased died. The tenor of these instruments is such that the only rational conclusion to be drawn respecting them is that they were intended to be in the nature of admonitions to her daughter by deceased to become effective only on the death of deceased.

One cannot legitimately draw the conclusion that deceased intended any different legal effect to be given to the first writing

than to the second. Each writing has in it the same general dispositive idea. Under the first there was plainly intended by deceased to deal as of her death at least with the disposition of *seventeen* thousand dollars worth of bonds. Under the second deceased was intending to dispose in the same manner only of *fifteen* thousand. Under the first deceased was talking of Liberty bonds, under the second she was talking just of bonds but concededly the bonds in issue while government bonds are not Liberty bonds. In both documents deceased was giving admonitions to her daughter not only in respect of the property which her daughter was to expect but also in respect to her daughter's attitude toward the other child of deceased, Natalie. In both of the instruments deceased charges her daughter with the duty to make distribution to others of property which the instruments designed to vest in others. In each there is the same evidence of anxious thought on the part of deceased for her favored daughter's future financial security.

Since the instruments, as thus analyzed, establish that they were intended to have a testamentary effect only and since as testaments they fail, the gift claimed by the accounting executrix is not established by these documents. Neither is the gift established by the combination of these documents and the presence of the bonds in the box which stood in the name of the accounting executrix. Whether in any true sense that box was other than deceased's box need not be inquired into. The first set of sheets (accountant's Exhibits 1-a to 1-c) refers to the due date and the amount payable as box rental in such terms as to indicate that deceased was paying the rent though the box nominally was her daughter's. Deceased had access to it at all events and — as the accountant's Exhibits 1-a to d show — made use of it for the storage of other of her property — property not claimed by the executrix as a gift. The conceded removal of the bonds by the executrix after deceased's death makes her possession of them of no consequence on the issue of title. (*Matter of Canfield*, 176 App. Div. 554.)

A case which superficially might seem to give support to the claim of gift (*Miller* v. *Silverman*, 247 N. Y. 447) proves on analysis to be substantial authority against the claim. In the cited case the question arose as one of law on a directed verdict. In an action in replevin the trial court had directed a verdict for the plaintiff and had denied a motion for a new trial. The proof was that in a safe deposit box used by deceased there was an envelope containing certificates of stock standing in the name of deceased on which was written by him the words: " All in envelope belong to Anna C. Miller." The proof also established that inside the envelope was

another slip of paper upon which deceased had written: " Whatever is in this envelope belongs to Miss Anna C. Miller." The proof showed also that there were two packets of bonds, one issued by a railroad company, the other by a utility company. To each packet was attached a slip in the handwriting of deceased stating that the respective bonds " belong to Anna C. Miller." The Appellate Division (221 App. Div. 697) reversed the directed judgment for plaintiff " upon the law and the facts " and dismissed the complaint. Thus the trial court had said that there was no issue of fact and that plaintiff was entitled to recover while the Appellate Division had said that there was no issue of fact for a jury and that defendant was entitled to a dismissal.

The Court of Appeals had before it only the question whether sufficient had been shown by plaintiff to make dismissal of the complaint appropriate *as matter of law*. After analyzing the facts the court said that there was a question of fact for a jury and ordered a new trial. The Court of Appeals did not say that such labels as were found in the box of deceased in the cited case establish a gift as matter of law. On the contrary, it stated these counsels of caution to the trial judge: " It may well be that in our case a trier of fact might consider that the declarations, as evidence of the plaintiff's title, were outweighed by evidence of other facts, such as the fact that the securities were purchased by New, the fact that dividends and interest moneys upon the securities were received by New, and the fact that no other person than New possessed the key to the safe deposit box which held the securities. However this may be, the fact remains that no trier of fact, as yet, has ever so held. The Appellate Division made no findings of fact. It dismissed the action as a matter of law."

There is here the admitted fact that deceased was the original purchaser of the bonds. There is here the admitted fact that deceased enjoyed the income therefrom until she died. There is here the equivocal fact that the bonds which originally were in a box exclusively in the name of deceased were transferred from time to time to boxes in the name of the alleged donee to which deceased at all times had access.

As trier of the fact the court holds that the so-called admissions which are found in accountant's Exhibits 1-a to d, inclusive, are not and were not intended to be declarations of a transfer of title effective in the lifetime of deceased. As trier of the fact the court holds that the writings in evidence (accountant's Exhibits 1-a to d, inclusive) were intended to have prospective and testamentary effect only and were not intended to operate until the death of deceased. (Compare *McCarthy* v. *Pieret*, 281 N. Y. 407, 409.)

As trier of the fact the court holds that the other factors emphasized by the Court of Appeals in its decision in *Miller* v. *Silverman* (*supra*) remove from the so-called admissions of deceased all weight as declarations of transfer of title. Accordingly the court holds that the bonds are the property of the estate of deceased. The accounting executrix is surcharged therewith and with the interest collected thereon whether due before or after the date of death of deceased. If counsel cannot agree upon the amount of this income the matter will be restored to the calendar for proof thereof. These rulings dispose of objections first (a) and second.

Objections first (b) and (c) raise issue as to the indebtedness due deceased by a corporation named in the objections. There may well exist a right of recovery in behalf of the estate against this corporation and any officer or director who has received any of its assets but there is not sufficient in this record to warrant a surcharge of the accounting executrix. It is shown by objectant's Exhibit 5 that in her lifetime deceased subordinated her claims against this particular corporation to the claims of other creditors of the corporation. Concededly those other creditors have not been paid in full and there is the query whether if collection were made by the estate the other creditors of the corporation could not claim the benefit of it. In any event the matter is sufficiently in doubt to make it inappropriate to surcharge the executrix. This ruling is, however, without prejudice to any rights of action which deceased or her estate may have in relation to this corporation.

Objection first (d) relates to a failure to collect from a different corporation. As to this second corporation it is shown that $2,300 was due deceased and that only $257.50 was paid on this debt. The proof in this proceeding shows that the whole of the debt was collectible and that it should have been collected. The proof shows that the failure of the executrix to collect it was due to her personal interest in the corporation debtor. Her failure to act is inexcusable and she is surcharged with the amount of this uncollected balance with the interest.

Objection first (e) is sustained to the extent of surcharging the executrix with the sum of sixty dollars. This is the amount conceded to have been the amount of checks prepared for delivery to deceased and probably delivered but later destroyed by the husband of the executrix. Even if his story that the checks were prepared only and were never delivered be accepted as true the executrix must be surcharged with the amount thereof since she was fully aware of the existence of this debt and of its collectibility. Again for personal reasons she took no action. The surcharge here made is without prejudice to the claim of the estate for the actual amount

of the loans made by deceased if such actual sum be found to be in excess of sixty dollars.

Objection first (f) is sustained. The court finds that the pin or brooch there referred to was the property of deceased and is the property of her estate. It should have been accounted for. Objection first (g) also relates to jewelry which has since the making of the objection been returned to the estate by the sister of the executrix to whom the jewelry was given as part of a distribution outside the estate under which the executrix got the brooch or pin with which she is surcharged. The testimony that the pin was pawned by the husband of the executrix does not militate at all against estate title. While it is appropriate that this jewelry should be accounted for as part of the assets of the estate the court is prepared to approve an agreement as to distribution of it if one is made by the residuary legatees.

Objection third relates to a transaction not within the scope of this accounting proceeding and all questions under it are reserved to a later accounting.

Objection fourth requires no separate ruling.

The consolidated proceeding asks for the removal of the executrix and that removal is ordered. Her whole course of conduct shows that she resented what she regarded as the intrusion of her mother's lawyer into affairs that she thought could be settled between herself and her sister, the other residuary legatee. The insistence of the coexecutor upon the performance of his duties has developed proof that the accounting executrix proposed to adjust the accounts of the estate in a manner which materially injured her sister's interests and benefited her personally. In the actual proceedings in the estate the executrix was guilty of repeated suppressions of fact. She consistently resisted proper inquiries into estate matters. She did all she could to prevent the collection of estate assets. In the actual hearing before the court itself her testimony was plainly given with a desire to prevent full knowledge of the facts. Her resistance to proper questions, her quibbling as to her answers and her attitude on the stand all made it plain that she was unfit for the performance of her fiduciary duty. She may have made the claim of gift of the bonds in good faith. She was advised by attorneys that she had a valid claim. These gentlemen in turn may have acted in good faith because they may have assumed the truth of statements made to them by the executrix herself though testimony on her part concerning an alleged gift could not be received when objected to. But assuming the actuality of her belief that she could claim the bonds she was under an obligation to be frank about the bonds, to disclose where they were and to disclose the

basis upon which she claimed them. She resisted the legitimate demands of her coexecutor and of her sister for information about them. She made various efforts to avoid an accounting for these bonds and on the whole was shown to have been actuated only by mercenary motives and a fear that the claim of title to the bonds would not stand scrutiny — a fear justified by the event. Her presence in estate management is merely detrimental to the estate. Her attorney asserts complete lack of business capacity on her part as an excuse for her shortcomings. When that complete lack of capacity is present with a determined effort to conceal the facts and to avoid collection of estate assets due from companies in which she has an interest it is obvious that in justice to the others interested in the estate she must be removed. Accordingly the prayer for her removal is granted.

The misconduct of the accounting executrix is such as to compel denial of commissions to her.

Submit, on notice, decree settling the account accordingly.