SARAH E. KELLY, Appellant, *v.* FRANKLIN B. BEERS et al.,
as Executors of KATE V. BEERS, Deceased, Respondents.

THE HOME SAVINGS BANK OF THE CITY OF ALBANY,
Defendant.

### Savings bank deposit — gift inter vivos.

The decedent Beers being the owner of an account in a savings bank
standing in her individual name had it changed so as to read "In
account with Kate V. Beers or Sarah E. Kelly, her daughter [the claim-
ant], or the survivor of them." This language imports joint ownership
by the decedent and claimant, with final sole ownership in the sur-
vivor; still the intent of the original owner, to create a trust for
another or to give to another joint interest in or ownership of the
deposit, is not established solely by the form of the deposit, but must
be evidenced also by circumstances surrounding and characterizing the
transaction.

The mother, the original owner of the bank account, frequently stated
that she desired the daughter to have her bank deposits, asked if her
deposit could be changed so that "If anything should happen to her
that her daughter could get the money without any trouble," closed
up her old account and opened the new one, being told that "the money
was fixed so that in case anything should happen to her plaintiff could
get it without any trouble, and   *   *   *   could draw the money at any
time." The new book was handed to the daughter and subsequently
remained in the joint and equal custody of mother and daughter.
The mother did nothing indicating change in her intent. *Held,* that
these acts and declarations of the mother in connection with others
demonstrated her purpose to create a condition embracing the essential
elements of joint ownership and survivorship.

The mother executed wills and codicils, previous to the change in form of
the deposit, which it is claimed negatived the intent to create a joint
ownership in the bank deposit. *Held,* even though it be assumed that
the deceased originally intended to dispose of her bank deposits by
will, that would not interfere with or destroy a purpose subsequently
formed, and executed, to dispose of them through the form of the
deposits themselves, as was done.

*Kelly* v. *Beers,* 124 App. Div. 917, reversed.

(Argued December 14, 1908; decided January 5, 1909.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the third judicial department, entered
February 25, 1908, affirming a judgment in favor of defend-

4

ants entered upon a dismissal of the complaint by the court on trial at Special Term.

The action was brought to establish plaintiff's ownership of a deposit in the defendant Home Savings Bank payable to her or the deceased Kate V. Beers, or the survivor, and the following facts, amongst others, were established beyond dispute, most of them being found by the trial court.

The deceased and the plaintiff were mother and daughter, part of the time at least residing together, and the only other child was a son, Franklin. For some time prior to September 30, 1901, Mrs. Beers was the sole owner, in her individual name, of a deposit in the defendant bank amounting to $1,829.34. Several weeks before said date she asked one of the bank officials if she could not have her account fixed so that either she or her daughter could draw the money at any time, and so that if anything should happen to her the daughter could get the money without any further trouble, and he told her to bring in her daughter and he would "fix it up." On the date mentioned she came to the bank with her daughter whom she introduced to the treasurer, telling him that she had come to have the book fixed up as previously talked about between them, and the treasurer told her that he would close out the old account and open a new one and put it in the name of Kate V. Beers or Sarah E. Kelly, her daughter, or the survivor of them, and that would fix it as she wished. He then filled out a check for the old account as it stood in the name of Mrs. Beers, who signed it and with it surrendered her old pass book. The treasurer then said to the two: "This fixes the account so that either one can draw the money out at any time, and in the event of the death of either the survivor is absolute owner. The will, executors, administrator or either has no control whatever over the book." He then called his assistant to take the signatures of the mother and daughter in the depositors' signature book and filled out a new pass book headed as follows: "The Home Savings Bank of Albany, N. Y., in account with Kate V. Beers or Sarah E. Kelly, her daughter, or the survivor of them," and in this

pass book he credited the sum of $1,829.34 passed from the old account. After making her signature and seeing her daughter do likewise, Mrs. Beers asked the assistant "if the money was fixed so that in case anything should happen to her plaintiff could get it without any trouble," and also if plaintiff should go to the bank "could she draw the money at any time," and the assistant in answer to both questions said, "Yes." The deceased took the new bank book and handed it to plaintiff.

Substantially similar transactions occurred at other banks in which Mrs. Beers had accounts originally standing in her sole individual name. In the case of the Albany Savings Bank, where she had an account aggregating $3,000, after asking and being advised "how she could arrange her book so her daughter could draw the money the same as herself," in the presence of her daughter she signed and delivered a written order, filled out and explained to her, reading as follows: "The Treasurer of the Albany Savings Bank will please add the name of my daughter Sarah E. Kelly as owner and creditor with me of all moneys heretofore or which may hereafter be deposited in said bank under this account No. 112086, together with all the interest which has been or may hereafter be credited to the said account, with full authority for each or either of us or the survivor of us to draw out of said bank the whole or any part of such moneys or such interest." After executing this order her former pass book and the books of the bank were so changed as to make the account read "Albany Savings Bank in account with Mrs. Kate V. Beers or Sarah E. Kelly, her daughter, or survivor."

In the case of the Albany Trust Company, Mrs. Beers executed and delivered to the bank an order similar in all respects to that last above set forth, and thereupon her pass book and the books of the bank were changed so as to read "Albany Trust Company in account with Kate V. Beers, or Mrs. Sarah E. Kelly, payable to either, or survivor of either."

In the case of the National Savings Bank she caused her account to be so changed as to make it "in trust for Sarah E. Kelly, her daughter."

The deceased at various times in 1897, 1902 and 1903 talked with various witnesses, apparently disinterested and credible, about her bank accounts, and to each one of them in substance said that she intended to have, or had had the money in the banks fixed so that the plaintiff could draw it out at any time during her life and would have it upon her death. She also upon one or more occasions spoke of the difference in the provisions for the plaintiff and her son respectively, and explained that the more favorable one in behalf of the former was due to the fact that she had no means while the latter was in good circumstances.

The pass books for all these accounts were kept locked up in a receptacle to which each party had a key. The mother died in 1903 and prior to such decease the account involved in this action had been increased to about $2,400. No withdrawals were made from it and none appear to have been made on any of the accounts except of interest, and on two or three occasions such withdrawals were made by the plaintiff in her own name, and it does not appear that such moneys were by her turned over to her mother.

By will executed in December, 1889, the deceased gave a legacy of $5,000 to plaintiff and also to her brother; in 1895 she revoked this will and made another one giving legacies of $4,000 and $3,000, respectively, to plaintiff and her brother; June 20, 1900, she made a codicil to the last will whereby she revoked the legacy to her daughter of $4,000, and in lieu thereof gave her "All and whatever money I shall at the time of my decease have on deposit in the Albany Savings Bank."

In December, 1900, she made another will revoking former ones, whereby she gave her son a specific legacy of certain property amounting on its face to $8,350, and gave to plaintiff "subject to the payment of my funeral expenses therefrom all and whatever money I shall have on deposit in any of the savings banks or other banks in the city of Albany, N. Y., at the time of my death, which amount I intend shall be about $7,000," further providing, however, that in case

there should not be $7,000 on deposit in said banks said sum should be made up from other moneys coming into the hands of the executors.

The total bank deposits standing in the name of deceased and plaintiff as above stated on the death of the former amounted to $9,878, and her estate and the aggregate of said accounts amounted to about $24,000.

The deceased, while quite aged at the time of her death, was active physically and in full possession of her mental faculties.

The trial court found that when the change in the form of the account herein involved was made, the deceased did not intend to create a joint ownership in herself and plaintiff or transfer the title or part with the right to control said account by will.

*Andrew J. Nellis* for appellant. The trial court having found that the change in the account was made to immediately vest the title to the fund remaining at the time of the death of the testatrix in her daughter if she survived her, his conclusion that there was not a completed gift, and that plaintiff could not recover, was erroneous. (*State* v. *P. Nat. Bank,* 70 Atl. Rep. 542; *Gilman* v. *McArdle,* 99 N. Y. 451; *Williams* v. *Fitch,* 18 N. Y. 546; *Ahrens* v. *Jones,* 169 N. Y. 555; *Amherst College* v. *Ritch,* 151 N. Y. 282; *Dunn* v. *Houghton,* 51 Atl. Rep. 70; *Smith* v. *Perrine,* 121 N. Y. 384; *Scriven* v. *N. E. Sav. Bank,* 166 Mass. 255; *Grafing* v. *Heilmann,* 1 App. Div. 260; *Van Cott* v. *Prentice,* 104 N. Y. 45; *Robinson* v. *Appleby,* 69 App. Div. 509.) It was error requiring the reversal of the judgment for the learned trial court to find that she did not intend to create a joint ownership in this account and to refuse to find the converse of the proposition. (L. 1907, ch. 247; *Mabie* v. *Bailey,* 95 N. Y. 206; *Hallenbeck* v. *Hallenbeck,* 103 App. Div. 107; *Ridden* v. *Thrall,* 125 N. Y. 572; *Matter of Reichert,* 38 Misc. Rep. 231; *Dunn* v. *Houghton,* 51 Atl. Rep. 70; *Benedict* v. *Arnoux,* 154 N. Y. 722; *Hotchkiss* v. *Mosher,* 48

N. Y. 478; *Humphrey* v. *N. Y., etc., Co.*, 121 N. Y. 444; *Kelly* v. *H. Sav. Bank*, 103 App. Div. 141; *Knapp* v. *White*, 23 Conn. 529.)

*William P. Rudd* and *Milton H. Merwin* for respondents. No material finding of fact is without evidence to support it. (*Young* v. *Young*, 80 N. Y. 422; *Beaver* v. *Beaver*, 117 N. Y. 421; *Curry* v. *Powers*, 70 N. Y. 212; *Matter of Bolin*, 136 N. Y. 177; *Wadd* v. *Hazleton*, 137 N. Y. 215.) The legal conclusion that there was no valid gift or creation of joint ownership necessarily follows from the facts found. (*Farleigh* v. *Cadman*, 159 N. Y. 169; *Schneider* v. *Schneider*, 122 App. Div. 774; *Williams* v. *Guile*, 117 N. Y. 346; *Matter of Bolin*, 136 N. Y. 177; *Matter of Totten*, 179 N. Y. 123.) The finding of the trial court that the change in the account on September 30, 1901, " was made by said Kate V. Beers merely as a matter of convenience in drawing the moneys from the bank, and also to vest the title to the fund remaining at the time of the death of Mrs. Beers, in her daughter, if she survived her," did not entitle the plaintiff to recover, nor does it present reversible error. (*Young* v. *Young*, 80 N. Y. 436; *Wadd* v. *Hazleton*, 137 N. Y. 215; *Turnbull* v. *Turnbull*, 118 App. Div. 447; *Sullivan* v. *Sullivan*, 161 N. Y. 554; *Grafing* v. *Heilmann*, 1 App. Div. 260.)

HISCOCK, J.   The appellant claims that she is the owner of moneys originally belonging to and deposited in the sole name of her mother, the deceased, but later and at the time of the latter's death deposited in an account payable to " Kate V. Beers or Sarah E. Kelly, her daughter, or the survivor of them." Her entire theory is that she was joint owner with her mother of these moneys during the latter's life and upon her death became entitled to the whole thereof as survivor. The trial court has found against her on the crucial question of the mother's intent in making and continuing the later deposit and, therefore, she assumes the burden on this appeal of estab-

lishing her theory and claim as matter of law and beyond any
question of fact.   I think she has successfully borne this
burden.

The possibility of so fixing a bank account that two persons
shall be joint owners thereof during their mutual lives and the
survivor take upon the death of the other is so well established
that we may assume and need not discuss it.

I think also it is so apparent that it must be conceded that
the account in question on its face imports such joint owner-
ship by appellant and the deceased with final sole ownership
by survivorship.

It has been written, however, in various decisions that the
mere form of the account in such a case as this will not be
regarded as sufficiently establishing the intent of the person
making it to create a trust in behalf of another or to give to
such another joint interest in or ownership of the deposit.
(*Beaver* v. *Beaver*, 117 N. Y. 421, 430; *Matter of Bolin*,
136 N. Y. 177, 179; *Matter of Totten*, 179 N. Y. 112,
125.)

Therefore it becomes proper to make brief reference to
other facts already stated in full which tend to establish that
the deceased did intend to give to her daughter the interest
claimed by the latter, and that this intent was consummated
in the deposit which was made and aptly and faithfully
expressed in the title and form of that account.

Such facts show the deceased frequently stating to out-
siders that she desired to have her bank deposits fixed so that
her daughter might have or draw them at any time during
her life and have them at her death; then explicitly and
formally asking an official of the defendant bank "if she
couldn't have her bank account fixed so that either she or her
daughter could draw the money at any time, and that if any-
thing should happen to her that her daughter could get the
money without any trouble;" then, in accordance with his
instructions, going with her daughter to the bank to have this
arrangement perfected, and, under the instructions of the
official, closing up the old account and opening the new one

in the form stated, for the purpose of accomplishing her intent, being told as and after she performed the necessary acts that "this fixes the account so that either one can draw the money out at any time, and in the event of the death of either the survivor is absolute owner. The will, executor or administrator or either has no control whatever over the book," and that "the money was fixed so that in case anything should happen to her plaintiff could get it without any trouble, and \* \* \* could draw the money at any time" if she "should come there to the bank." And after the signatures of both as depositors had been entered in the proper bank book, the pass book was taken by the daughter and placed in the joint and equal custody of both, and from that time to her death the deceased never did a thing which threw any shadow on her intent in making the new deposit, or indicated the slightest change in or abandonment or revocation of such intent. And further, and as illustrating the extent and absoluteness of the interest which she intended to give to her daughter in the bank accounts, we find that in the case of deposits in other banks by formal writing she made the daughter "owner and creditor" with her of all moneys deposited and authorized each or either of them or the survivor of them to draw out the whole of said deposits.

It seems to me that all of these facts demonstrate the purpose of the deceased to give to the appellant the interest which she claims with a clearness and force beyond that required by the authorities. (*Mack* v. *Mechanics & Farmers' Sav. Bank,* 50 Hun, 477; *Farrelly* v. *Emigrant Industrial Sav. Bank,* 92 App. Div. 529; *Mabie* v. *Bailey,* 95 N. Y. 206; *Beaver* v. *Beaver, supra,* 431; *Matter of Totten, supra ; Augsbury* v. *Shurtliff,* 180 N. Y. 138, 141; *Same Case,* 114 App. Div. 626; affd., 190 N. Y. 507; *West* v. *McCullough,* decided without opinion, January 5, 1909 [194 N. Y. 518].)

It is true that some of the foregoing cases simply decided that the evidence there presented authorized a finding as matter of fact of a gift such as is claimed here, that being the only question presented. But principles necessarily involved

or enunciated sustain the interpretation now placed on them as applied to the facts which have been discussed.

It remains to consider in some detail the respondents' argument that the foregoing view is incorrect or at least that there is other evidence which taken in connection with that especially referred to permits inferences sustaining the findings in their behalf.

While the counsel for respondents in disputing that the deposit was made with the intent and for the purpose claimed by Mrs. Kelly, says that on the other hand it was made and the power to draw moneys given as a matter of convenience, he very frankly admits that he does not mean any mere physical convenience. This element was not involved, for Mrs. Beers was so capable of taking care of herself and of her affairs that there was no necessity for conferring upon the daughter the power to draw money as a matter of convenience to her mother. This term of " convenience " seems rather to have been used by the court and counsel as a form of stating that the mother did not intend joint ownership but did intend something else.

In the first place it is said that Mrs. Kelly at the time of her mother's death made an admission to one of the defendants contradicting her present claim. Without quoting this admission it may be stated that it has been analyzed and that I see nothing in it which contradicts the present claim. It does not give a full history of all that was done, as actually found by the trial court, but so far as it does go it does not raise any issue with the other testimony.

In the second place, it is urged that the various wills and codicils made by the deceased are indicative of an intent on the part of Mrs. Beers to maintain her ownership and control of the bank accounts and, therefore, are contradictory of that which is claimed by appellant. There appear to be several answers to this proposition. If the deceased having an intent to give joint and surviving ownership to her daughter, consummated that intent by the performance of the necessary acts, I suppose that the original nature and effect of these acts

would not be affected or destroyed even if subsequently her views changed, such mental change not being carried into any legal or effective revocation of that which had been done. In the *Mabie* case, cited *supra*, the person making a deposit in trust which was the subject of litigation subsequently withdrew the same and it was claimed that this indicated that he did not intend to create a trust, but Judge ANDREWS said, at p. 211: " The fact that the deposits for the plaintiff and others were subsequently * * * drawn out by Dr. Bailey, is not legitimate evidence that he did not intend when the deposits were made to create a beneficial trust for the beneficiaries named. If the withdrawal was with intent on his part to ignore the trust and to convert the money to his own use, it might be competent evidence of a change of purpose, but it throws no light on the original transaction." (See, also, *Scheps* v. *Bowery Savings Bank*, 97 App. Div. 434.)

But further than this, if it should be assumed that there was anything in the wills when executed which could be regarded as sufficient to negative the idea or counteract an intent of Mrs. Beers to create a joint ownership in a bank deposit, I do not think that it would affect this case. All of the wills and codicils admitted in evidence as bearing on this question were executed before the deposit involved in this action was changed into its present form. Those instruments, of course, if they bore on the subject at all, indicated the testator's intent at the respective dates when they were executed. Therefore, if this deposit subsequently made was at variance with any provisions in them it and not they must be controlling. Even though it be assumed that the deceased originally intended to dispose of her bank deposits by will, that would not interfere with or destroy a purpose subsequently formed and executed to dispose of them through the form of the deposits themselves as was done.

Lastly in somewhat general terms it is insisted that the deceased did not inquire about joint ownership or transfer of title; there was no idea or suggestion of a present gift or transfer; she did not part with the control of the title or

intend to create a new kind of ownership or intend to give Mrs. Kelly the right to have an equal share of the income or by means of the transfer obtain an absolute, immediate ownership of one-half of the fund ; did not intend Mrs. Kelly should draw the moneys during her life.

It seems to me that these assertions are the expression of a theory unjustifiably evolved from assumptions rather than the statement of conclusions legitimately drawn from the evidence.

It has been held so many times that courts will be controlled by the substance of a transaction rather than by the name given to it, that it is a matter of no importance that the particular terms " joint ownership " and " joint account " were not used by Mrs. Beers.   The controlling question for us has been and is whether she intentionally and intelligently created a condition embracing the essential elements of joint ownership and survivorship.   If she did, that was sufficient even though she did not use any particular formula in doing it. Her acts and repeated declarations indicate that she did intend to do just that which is denied, give to her daughter joint ownership in and control over this account.   It is true that her daughter did not draw any checks on it during the life of the mother, but it is also true that the mother herself did not draw any checks on it during the same time.   It is true that the mother did retain control over the account in that she had the right at any time to check out all of the moneys and destroy the account, but so did the daughter.   For the sake of the argument we might assume that the primary purpose of the mother in creating the account was to pass the money on her death to her daughter and that she did not expect under ordinary circumstances that the daughter would draw out the money during her life any more than that she herself would draw it out.   But if we assume all of this, such assumption would simply go to the expected exercise by the daughter of her legal rights rather than to the existence itself of those rights.

In short, starting with the performance by Mrs. Beers deliberately and advisedly of certain acts legally calculated and sufficient to accomplish certain purposes, and charging her not

only as we must as a matter of law, but as we ought to as a matter of fact, with appreciation of the significance and consequences of what she did, we are unable to discover in this record any evidence of an intent not to effect that legal result which her acts naturally and presumptively did accomplish.

Some reference was made to the equities of the division of the mother's estate between the appellant and her brother, if the former's claim to these deposits should prevail. While such considerations might be helpful under some circumstances in helping us to decipher the obscure or uncertain intent of a deceased person, I do not think they are of consequence in this case in dealing with well-established acts which are not of doubtful or uncertain character. Moreover, it is possible that on the settlement of the estate of the deceased under her will such disparity as is now claimed between the provisions for the two children respectively will be avoided or be found not to exist.

The judgment appealed from should be reversed and a new trial granted, with costs to abide event.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, VANN and WERNER, JJ., concur; CHASE, J., not sitting.

Judgment reversed, etc.