WILLIAM E. HAVENS and Others, as Administrators, etc., of MARY J. BRADY, Deceased, Plaintiffs, *v.* CARRIE B. HAVENS and Another, Defendants.

Supreme Court, Onondaga County, August 13, 1925.

Banks and banking — action by administrators to recover amount deposited by intestate in her name and name of another " either, or survivor, or survivors to draw "— deposit was made in special interest department of trust company — rules for determining ownership under Banking Law, § 198, stated — evidence shows intestate intended to create joint tenancy in money — survivor entitled to money.

Where money is deposited by a person in a special interest department of a trust company in her name and in the name of another, and the depositor subsequently dies, the rules for determining the ownership of the deposit under section 198 of the Banking Law are as follows: *First.* The statute does not apply unless

the account is opened in substantially, if not precisely, the form mentioned in the statute. *Second.* When the account is in the statutory form, that single fact, unexplained by other competent evidence, fixes the respective rights of the depositors named, as joint owners of the property, with all the incidents attaching to such ownership, including the right of survivorship. *Third.* That as between the parties themselves, that presumption may be rebutted by proof of the actual agreement as to the ownership of the fund. *Fourth.* That when the fund deposited was originally the property of but one of the depositors, it must appear that the account was opened in the statutory form with the knowledge and consent, express or implied, of the owner of the fund. *Fifth,* That when the account, although in form joint, is not in the statutory form, the question of its ownership is to be determined according to common-law principles, without regard to the statute.

Accordingly, in this case in which the deposit made by the intestate was made in the special interest department of a trust company in her name and in the name of another, " either, or survivor, or survivors to draw," the presumption is that the intestate and said other person were joint owners of the money so deposited by the intestate, and upon the death of the intestate said other person became the sole owner thereof, as survivor, and the burden of proof is upon the administrators to rebut that presumption.

The evidence in this case establishes that the intestate at the time she made the deposit in the form specified intended to create in herself and said other person a joint tenancy in the fund and that at that time she appreciated the legal effect of her act and, therefore, the money belongs to the surviving joint tenant.

ACTION in the nature of interpleader to determine title to bank account.

*Louis L. Waters,* for the plaintiffs,

*Eugene D. Lichtenberg,* for the defendant Havens.

*Harold M. Weisenberg,* for the defendant City Bank Trust Company.

CHENEY, J. This action is in the nature of an interpleader to determine the title to a certain bank account in the bank of defendant City Bank Trust Company in the name of " Mrs. Mary J. Brady, Mrs. Carrie B. Havens, either, or survivor, or survivors to draw," opened August 15, 1924, amounting at that date to $4,997.55. Interest of $99.95 was credited on the account January 1, 1925, making the amount thereof at the time of the trial $5,097.50, and further interest will be credited July 1, 1925, of $101.94, so that the total amount involved in the litigation is $5,199.44. Plaintiffs claim title to this account as the administrators of Mary J. Brady, deceased; and the defendant Carrie B. Havens claims it by reason of the fact that she is the survivor of the two alleged joint owners. The defendant City Bank Trust Company is indifferent as between the two claimants, desiring only to pay the fund to the one to whom it rightfully belongs.

The question of the ownership of so-called " joint " bank accounts, especially in savings banks, has been a troublesome one before the courts for years, and a long line of decisions has resulted and it is difficult to reconcile them with each other and with the theretofore accepted principle of law. The Legislature has stepped into the situation and has enacted various statutes, which will be hereafter considered, and the courts have variously construed those statutes, with the result that the situation is about as obscure now as it was before the passage thereof.

The question ordinarily arises when a person deposits his own money in a bank in the name of another, and such deposits are made in a variety of ways. One method is the deposit by one person of his own funds in the name of another, without any qualification. It was held in *Beaver* v. *Beaver* (117 N. Y. 421) that in order that the title shall pass to the person in whose name the deposit is made there must be created either a trust in his favor or a gift to him; that a trust may not be implied from a mere deposit in a savings bank by one person in the name of another, and that to constitute a valid gift of personal property there must be on the part of the donor an intent to give, and a delivery, in pursuance of such intent, of the thing given to or for the donee, which delivery may be either by actually transferring the manual custody of the thing given to the donee, or by giving him the symbol which represents possession.

Another method frequently adopted is by the deposit by one person of his own money in his own name as trustee for another. The rule applicable to such cases was finally settled in *Matter of Totten* (179 N. Y. 112) where the court held that such a deposit, standing alone, does not establish an irrevocable trust during the lifetime of the depositor; that it is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book, or notice to the beneficiary; in case the depositor dies before the beneficiary, without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.

Another form was to make the deposit in the name of the depositor and another jointly. The leading case dealing with that form of deposit is *Kelly* v. *Home Savings Bank*. When this case first came before the Appellate Division (in 103 App. Div. 141) the court adopted the statement of the rule in *Farrelly* v. *Emigrant Industrial Savings Bank* (92 id. 529), as follows: " Where, however, the deposit is in joint names and the intent appears to create the joint tenancy,

its effect is to vest title to the whole fund in the survivor, and under such circumstances, whether the book be delivered to the survivor or not, or whether he ever has had it in his possession during the lifetime of his joint owner, is not of consequence, as the intent existing to create the relation of a joint tenancy, title vested in the survivor *eo instanti,* upon the death of the joint owner, and no delivery of anything is necessary to effectuate such result.''

The court reversed the judgment in favor of the executors of the depositor on the ground that the trial court did not give sufficient importance to the intent of the depositor, and granted a new trial. On the new trial the executors were again successful and the judgment was affirmed. (124 App. Div. 917.) The case came before the Court of Appeals (*sub nom. Kelly* v. *Beers,* 194 N. Y. 49), where the judgment was reversed. The court in the opinion (at p. 55) said: '' The possibility of so fixing a bank account that two persons shall be joint owners thereof during their mutual lives and the survivor take upon the death of the other is so well established that we may assume and need not discuss it. I think also it is so apparent that it must be conceded that the account in question on its face imports such joint ownership by appellant and the deceased with final sole ownership by survivorship. It has been written, however, in various decisions that the mere form of the account in such a case as this will not be regarded as sufficiently establishing the intent of the person making it to create a trust in behalf of another or to give to such another joint interest in or ownership of the deposit. [Citing cases.] Therefore it becomes proper to make brief reference to other facts already stated in full which tend to establish that the deceased did intend to give to her daughter the interest claimed by the latter, and that this intent was consummated in the deposit which was made and aptly and faithfully expressed in the title and form of that account.''

After discussing the facts in that particular case the court said (p. 59): '' It has been held so many times that courts will be controlled by the substance of a transaction rather than by the name given to it, that it is a matter of no importance that the particular terms ' joint ownership ' and ' joint account ' were not used by Mrs. Beers. The controlling question for us has been and is whether she intentionally and intelligently created a condition embracing the essential elements of joint ownership and survivorship. If she did, that was sufficient even though she did not use any particular formula in doing it. Her acts and repeated declarations indicate that she did intend to do just that which is denied, give to her daughter joint ownership in and control over this account. It is true that her daughter did not draw any checks on it during the

life of the mother, but it is also true that the mother herself did not draw any checks on it during the same time. It is true that the mother did retain control over the account in that she had the right at any time to check out all of the moneys and destroy the account, but so did the daughter. For the sake of the argument we might assume that the primary purpose of the mother in creating the account was to pass the money on her death to her daughter and that she did not expect under ordinary circumstances that the daughter would draw out the money during her life any more than that she herself would draw it out. But if we assume all of this, such assumption would simply go to the expected exercise by the daughter of her legal rights rather than to the existence itself of those rights. In short, starting with the performance by Mrs. Beers deliberately and advisedly of certain acts legally calculated and sufficient to accomplish certain purposes, and charging her not only as we must as a matter of law, but as we ought to as a matter of fact, with appreciation of the significance and consequences of what she did, we are unable to discover in this record any evidence of an intent not to effect that legal result which her acts naturally and presumptively did accomplish."

It thus appears that the courts had decided that in all these different forms of deposit, the decisive fact of the transfer of title was the intent of the depositor; that such intent was not to be determined from the form of the deposit alone, but it still remained a question of fact to be decided in each case from all the evidence upon that subject produced at the trial.

With the law very well settled as above stated, the Legislature in 1907 passed chapter 247 of that year, as an amendment to section 114 of the Banking Law of 1892 (Laws of 1892, chap. 689), a part of the chapter relating to savings banks, by adding this language: ". When a deposit shall be made by any person in the names of such depositor and another person and in form to be paid to either or the survivor of them such deposit thereupon and any additions thereto made by either of such persons upon the making thereof, shall become the property of such persons as joint tenants and the same together with all interest thereon shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both or to the survivor after the death of one of them and such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to said bank for all payments made on account of such deposit prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof."

This section, as thus amended, was carried forward into the

Banking Law (Consol. Laws, chap. 2; Laws of 1909, chap. 10) as section 144.

It would seem to have been the legislative intent to declare that when parties knowingly open an account in that form that the legal effect of their act was to create a joint tenancy in the fund, with the right of survivorship as an incident thereto.

This statute has from time to time been construed by the courts. The first case was *Bonnette* v. *Molloy* (153 App. Div. 73 [1912]). That case affected a deposit made prior to the act of 1907, and it was accordingly held not to apply, although the court said: " If the moneys had been deposited after the enactment of this statutory provision, there could be no question but that the defendant [the survivor] would be entitled to the fund."

The next case was *Clary* v. *Fitzgerald* (155 App. Div. 659) in which the account read, " Mrs. Kate Connelly or Mrs. Kate A. Fitzgerald, either or survivor, may draw," and the court said: " We think, therefore, that the necessary effect of this provision of the statute is that the single fact, unexplained by other competent evidence, that a deposit in a savings bank in the form in which this deposit was made fixes the respective rights of the depositors named as joint owners of the property with all the incidents attaching to such ownership. It may be true that the depositors, or their representatives, as between themselves may be permitted to show by other competent evidence that title as joint owners was not intended to be established nor in fact conferred. Inasmuch as the actual agreement as to the title would be one between the named depositors themselves, the bank would not be a party to that agreement as to the ownership of the fund; and such an agreement might doubtless be proved even by parol evidence in a controversy between the parties to fix their relative rights to the fund. * * * We conclude, therefore, that the deposit in the bank of the fund in the form in which it was made was sufficient in the first instance to establish in this action a joint ownership in the fund with the attendant right of survivorship therein, and that no evidence of a contrary intention was presented by plaintiff." That case was affirmed without opinion (213 N. Y. 696).

In 1914 the Banking Law was again revised (Laws of 1914, chap. 369), and this provision, section 114 of the Banking Law of 1892, as amended in 1907, and section 144 of the Banking Law of 1909, which had applied to savings bank accounts only, was continued and made applicable to banks (§ 148), trust companies (§ 198) and savings banks (§ 249) in precisely the same language, except such change as was necessary to make it applicable to the different kinds of banking institutions, and an added provision with

reference to savings bank accounts which will be hereafter discussed. I quote the trust company section (§ 198) as that is the one applicable here: " When a deposit shall have been made by any person in the name of such depositor and another person and in form to be paid to either, or the survivor of them, such deposit thereupon and any additions thereto made, by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to either during the lifetime of both, or to the survivor after the death of one of them; and such payment and the receipt or acquittance of the one to whom such payment is made, shall be a valid and sufficient release and discharge to said company, for all payments made on account of such deposit prior to the receipt by said company of notice in writing signed by any one of such joint tenants, not to pay such deposit in accordance with the terms thereof."

I have been unable to find any decision construing this section alone.

Section 249 of the Banking Law of 1914, applicable to savings banks, reads the same, but at the end thereof appears this additional provision, evidently inserted to meet the case of *Clary* v. *Fitzgerald* (*supra*) which practically nullified the legislative intent expressed in section 144 of the Banking Law of 1909: " The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such savings bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor." This section has frequently been construed, but the decisions have hinged upon the effect of the addition, appearing only in the savings bank section, rather than that of the language which is common to the three sections which states that when a deposit is made in that form it shall become the property of such persons as joint tenants.

In *McNett* v. *Crandell* (172 App. Div. 375) the court said: " The new Banking Law (Consol. Laws, chap. 2; Laws of 1914, chap. 369) at section 249 declares, in substance, that a deposit made in substantially this form shall be deemed the property of the persons named, as joint tenants, and that the making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such savings bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in

11

such survivor. I think this statute was not intended to be an enactment of a new law, but was rather a declaration of the existing law upon the subject."

In *Matter of Delmore* (174 App. Div. 99), a case affecting the title to savings bank deposits, the court, inadvertently citing the wrong section, said: " In addition, under section 148 of the Banking Law (Consol. Laws, chap. 2; Laws of 1914, chap. 369), which re-enacted in amended form section 144 of the former Banking Law (Consol. Laws, chap. 2; Laws of 1909, chap. 10), those deposits having been made in the name of the depositor and another person, and in form to be paid to either or the survivor of them, the deposits and any additions made thereto by either of such persons upon the making thereof became the property of such persons as joint tenants and the same together with all interest thereon became their property and payable to either during the lifetime of both or to the survivor after the death of one of them. Therefore, both from the viewpoint of a valid gift, and of the vesting of title to the deposits in the survivor by operation of the Banking Law, the funds in question were the property of Mary F. McGiff and not of the estate of the decedent. Any finding to the contrary, therefore, was unwarranted."

The next case is *Hayes v. Claessens*, which first came before the court in 189 Appellate Division, 449, where the court reversed a judgment in favor of the survivor. The facts involved are these: Christina McGovern had a deposit of savings in the Manufacturers' National Bank of Troy. On December 12, 1917, she signed an order reading as follows:

" Manufacturers' National Bank of Troy, N. Y. Pay Trans to joint a/c Margaret Hayes and Christina McGovern or bearer seventy-eight hundred one 69/100 dollars, on account of money standing to my credit or subject to my control in your bank, as a special deposit on interest per pass book No. 14916.

her<br>" CHRISTINA X McGOVERN "<br>mark

The sum named with interest made up the total amount to her credit in the bank. She passed the paper with her pass book to Margaret Hayes and directed her to attend to the business as soon as she could. Margaret took the order and pass book to the bank the same day and a transfer of the entire account was made on the books of the bank to the joint account of Margaret Hayes and Christina McGovern. Christina McGovern died three days later. The court said: " There was no other competent proof than the facts recited tending to establish a transfer to Margaret Hayes of

a legal title to the fund. No consideration for a transfer was proven; no relationship or indebtedness between the parties was shown; no evidence of an intent to give, or of a delivery of the subject of the gift, other than as stated, was presented. On the other hand, letters written by Margaret Hayes to various relatives of Christina McGovern, after her death, show conclusively that the parties themselves did not understand that any transfer of title had been accomplished. * * * The paper authorizing the bank to change the form of the deposit did not of itself operate as a transfer of title to the fund. It was directed only to the bank, and the direction if followed would have effected no transfer. * * * The statutory provisions do not apply in this case, for the reason that there was no authorized deposit to the credit of Margaret Hayes and Christina McGovern ' in form to be paid to either or the survivor of them.' The authorities are uniform that no presumption arose from the form of the paper in question that a transfer of title was intended."

Upon the second trial the survivor again had a verdict, which was again reversed. (202 App. Div. 762.) The case came before the Court of Appeals (234 N. Y. 230) where the judgment was affirmed in so far as there was any evidence to sustain it, the court saying: " One Christina McGovern had on deposit in the Manufacturers' National Bank of Troy the sum of $8,096.49. This amount she transferred to the joint account of herself and one Margaret Hayes. It was found by the trial judge that this was done with the intention of making Margaret Hayes a joint owner of the account and with the intention that if Margaret Hayes survived, as she in fact did, she should be its sole owner. The Appellate Division, however, reversed these findings and held that there was no transfer of the $8,096.49 to Margaret Hayes, but that that sum belonged to Christina McGovern at the time of her death. There was evidence to support this finding."

In the case of *Matter of Fonda* (206 App. Div. 61) the account was in a savings bank in the name of " Elizabeth B. Fonda or Milton P. Miller, pay to either or the survivor of either " at the time of the death of Fonda. The account was placed in this form under the following circumstances. Mrs. Fonda, a few weeks before her death, handed to her nephew, Miller, her savings bank pass book with a note to the bank reading as follows: " Kindly make my nephew my survivor of what I have in this book and oblige, Very sincerely, Elizabeth B. Fonda. Milton P. Miller, nephew." The nephew delivered the pass book to an official of the bank, who wrote on the bank book, after the name " Elizabeth B. Fonda," the words " or Milton P. Miller." The pass book

was handed back to the nephew, who delivered it to his aunt, by whom it was retained until her death. Subsequently the aunt said to the bank official: " Isn't there some stamp or something you put on the book making it payable to either? " He replied that there was, and stamped upon the book: " Pay to either or the survivor of either." The court, in determining the ownership of the account, said: " The common-law rules in relation to gifts were modified, so far as they applied to bank accounts, by section 114 of the Banking Law of 1892, as amended by chapter 247 of the Laws of 1907, which was revised by section 144 of the Banking Law of 1909 and by section 249 of the Banking Law of 1914. That section makes certain provisions in relation to savings bank deposits of which it is sufficient to quote the following: ' When a deposit shall be made by any person in the names of such depositor and another person and in form to be paid to either or the survivor of them, such deposit and any additions thereto made by either of such persons after the making thereof, shall become the property of such persons as joint tenants.' This provision evidently modifies the law to make unnecessary a delivery of a symbol of the deposit. Together with other provisions not quoted it gives to a deposit in the form named the value of raising a presumption of an intent to make an immediate gift. (*Clary* v. *Fitzgerald,* 155 App. Div. 659.) However, as the provisions are in derogation of the common law they must be strictly construed. It has accordingly been held that the form of the deposit must be in strict conformity with that expressed by the statute, or the statute will not apply. (*Hayes* v. *Claessens,* 189 App. Div. 449.) Moreover the presumption merely makes a *prima facie* case which evidence to the contrary will overcome. (*Matter of Buchanan,* 184 App. Div. 237.) In our case the first writing upon the pass book, to wit, ' Elizabeth B. Fonda or Milton P. Miller,' was not in the statutory form. The second writing, ' pay to either or the survivor of either,' closely approximates that form. It was not, however, the precise form chosen by the depositor. She inquired if there were not some stamp which would make the deposit payable to either and said she wanted it that way. She said nothing about inserting the words ' or the survivor of either ' which are an essential part of the statutory form. She did not, therefore, select the words used. Moreover, Milton P. Miller himself stated that the intent at all times expressed by the depositor was to make him the owner of what remained in the deposit after her death. That is consistent with the note which the depositor sent to the bank official wherein she said, ' Kindly make my nephew my survivor.' It is not inconsistent with her subsequent inquiry made of that official as to making the account

payable to either. There was no proof, therefore, that Elizabeth Tripp Fonda intended to make an immediate gift, whereas, on the contrary, all the proof indicated that she intended to make a gift which would take effect only after her death. The statute was, therefore, ineffective and the attempted gift, under common-law principles failed."

In *Matter of Buchanan* (184 App. Div. 237) the moneys in question originally were the property of R. and were sent to B., her attorney, with direction that he deposit the same in such form that he could at any time attend to the withdrawal thereof. He deposited them in four savings bank accounts, two of them in the name of "Elizabeth A. Rawolle or Charles J. Buchanan as her attorney or the survivor," and the other two in the name of "Charles J. Buchanan or Elizabeth A. Rawolle, payable to either or the survivor of them." The question came up by reason of the assessment of a transfer tax thereon after the death of Buchanan. The court said: "It is not claimed here that the intention of the parties was otherwise than that sole title to the deposit should remain in Elizabeth A. Rawolle. The contention is merely this: That by the force of a certain statute, notwithstanding the will of the parties interested, the form of the deposits operated to transfer title and make Charles J. Buchanan and Elizabeth A. Rawolle joint owners thereof with remainders to the survivor. The statute relied upon is section 249 of the Banking Law (Consol. Laws, chap. 2; Laws of 1914, chap. 369). That section reads in part as follows: 'When a deposit shall be made by any person in the names of such depositor and another person and in form to be paid to either or the survivor of them, such deposit and any additions thereto made by either of such persons after the making thereof, shall become the property of such persons as joint tenants.' Then follows a provision to the effect that in such case the deposit may be paid to either depositor, or to the survivor, and that a receipt given by the person thus paid shall discharge the bank, provided notice not to pay is not previously given. This was clearly an enactment made to protect the savings banks in disbursing moneys. It did not affect the title of the depositors as between themselves, whose rights could be otherwise shown. (*Clary* v. *Fitzgerald*, 155 App. Div. 659.) No further provision, material here, was contained in this section of the Banking Law until the year 1914, when the following sentence was added thereto: 'The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such savings bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such sur-

vivor.' (Laws of 1914, chap. 369.) It will be observed that the operation of this section is not limited, so that, for purposes of taxation only, or for bank protection only, the deposits are conclusively to be deemed joint. The presumption is made conclusive ' in any action or proceeding to which either such savings bank or the surviving depositor is a party.' The presumption is to obtain in all cases ' in the absence of fraud or undue influence.' Taken literally it would protect a thief who deposited stolen moneys, in the specified form, against the estate of the owner, whom he had made a joint depositor; for a thief is guilty neither of ' fraud ' nor the exercise of ' undue influence.' It will be observed that the presumption created does not at all depend upon a consent to the deposit by the real owner. It operates ' when a deposit shall be made by any person in the names of such depositor and another person.' Thus if the owner of moneys, as in this case, sends them to an attorney for deposit, and hei nnocently deposits them in joint account, the owner, without consenting thereto, in part loses title to her property. The so-called conclusive presumption is, therefore, in effect not a rule of evidence, but a provision of substantive law. As said by Wigmore: ' In strictness, there cannot be such a thing as a " conclusive presumption." Wherever from one fact another is conclusively presumed, in the sense that the opponent is absolutely precluded from showing by any evidence that the second fact does not exist, the rule really provides that, where the first fact is shown to exist, the second fact's existence is wholly immaterial for the purpose of the proponent's case; and to provide this is to make a rule of substantive law.' (Wigm. Ev. § 2492.) If this be the meaning of the provision, then arbitrarily, for no public purpose, without compensation and by no due process of law, an owner is made to lose his property without his consent and without his knowledge. If so construed it is not valid and does not affect this case. If it be construed as declaring merely a rule of proof, subject to rebuttal, the case is equally unaffected, for the rebutting proof is overwhelming that Elizabeth A. Rawolle was the sole owner of the deposits."

The effect of this " conclusive presumption " provision was further discussed in *Heiner* v. *Greenwich Sav. Bank* (118 Misc. 326) as follows: " It is claimed that the legislature had no authority to provide that the making of the deposit in the form stated should be conclusive evidence in any action or proceeding to which either such savings bank or the surviving depository is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor. The first part of subdivision 3 of section 249 with reference to the creation of joint tenancies in

deposits came into the law by way of an amendment to the Banking Law in 1907 (Laws of 1907, chap. 247). The last paragraph was added in 1914 (Laws of 1914, chap. 369). Before these laws a deposit in the form stated was not regarded as sufficiently establishing the intent of the person making it to create a trust in behalf of another or to give such another joint interest in or ownership of the deposit. (*Kelly* v. *Beers*, 194 N. Y. 49, citing *Matter of Bolin*, 136 id. 177.) Under the provisions of subdivision 3 of section 249 of the Banking Law, as created by chapter 247 of the Laws of 1907, which does not include the last paragraph with reference to the effect of such a deposit, it was held that there was created a joint tenancy, and, in the absence of other evidence, the survivor would be entitled to the fund. The presumption, however, was rebuttable. (*Clary* v. *Fitzgerald*, 155 App. Div. 659; affd., 213 N. Y. 696.) Then came the amendment of 1914 consisting of the last paragraph. The only case found which considers the question raised by this amendment is *Matter of Buchanan* (184 App. Div. 237). Mr. Justice HENRY T. KELLOGG discusses the question in light of what is said by Wigmore in his book on Evidence (§ 2492), that there cannot be such a thing as a conclusive presumption, and that the statute really creates a rule of substantive law. Upon that basis the learned justice concludes that the deceased depositor has been deprived of his property without due process of law. He refers to a case of a thief who deposited the stolen moneys in the specified form, and states that under the statute he would be the owner of the fund upon the death of the real owner because there would be no fraud or undue influence. Reference is also made to a case where the owner sent another to deposit his moneys in a savings bank and the attorney innocently deposits them in joint account for himself and the owner. It is urged that in such a case under the statute the real owner without consenting thereto in part loses title to his property. It seems to me in testing the constitutionality of an act the spirit and not the letter thereof must be taken into consideration. The legislature, in my opinion, intended that the form was only conclusive evidence as to accounts opened with the intention of the owner or owners of the money. The provision should not be deemed to include accounts otherwise opened. I think this is shown by the exclusion of accounts in connection with which there has been fraud and undue influence. Many acts held to be constitutional might have been held to be unconstitutional upon the basis of supposititious fanciful facts not within the spirit of the act. But even in the two cases mentioned by the learned justice, it seems to me that there would be a fraud within the spirit of this act. For the thief to claim as his own that which belonged to another

or for a trustee to claim moneys which belonged to another would be in the nature of frauds. The same would apply to any account not opened with the consent of the owner. It seems to me, therefore, that if this statute be construed as a rule of substantive law, it does not deprive a party of his property without due process of law. The provision is not altogether clear, but refers, I think, exclusively to an action where one of the parties named in the account is dead. During the lifetime of both of the depositors either one would have the right to establish the real fact, whatever it might be, with reference to the account, and would have the right to bring an action in respect of that. He thus has an opportunity for his day in court and through him his personal representatives would have their day. The statute may be upheld on another basis. The legislature has the power to limit remedies. Under this statute it may be said that the remedy for a claim that the account is not what it purports to be must be pursued during the lifetime of one of the depositors. It may be construed to be of the nature of a statute of limitation. As shown above, this would not be a taking of property without due process of law, because during his lifetime the decedent could have sued with reference to the account. In *People* v. *Turner*, 117 N. Y. 227, the court had under consideration section 65, chapter 448 of the Laws of 1885, declaring that all conveyances theretofore executed by the comptroller on sale of land for unpaid taxes, after having been recorded for two years, shall six months after this act takes effect be conclusive evidence that the sale and all proceedings prior thereto were regular, etc. The court held that the act was in its principal aspects one of limitation and within the constitutional power of the legislature to enact. At page 233 it is said: ' The power of the legislature to change rules of evidence as they exist at common law, and to limit, change and vary existing rules for the limitation of actions, has been the subject of frequent consideration in the courts, and has been uniformly held not to be affected or restricted by the constitutional provisions prohibiting the taking of life, liberty or property without due process of law.' Construing this statute, not as a rule of evidence which would make it repugnant to judicial function to decide issues of fact, but either as a rule of substantive law or as a limitation of a remedy, the constitutionality of the act cannot be questioned. Although the proof in the case shows, and I shall find, that it was the intention of the decedent in creating the joint account to do it for the sake of convenience and not for the purpose of creating any rights in the defendant, the testimony in that respect cannot avail the plaintiff, and there must be judgment for the defendant."

In the case of *McDonald* v. *Sargent* (121 Misc. 437) the following language was used: "As I understand the facts in the instant case, the account was not opened in the form prescribed by the statute but simply as a joint account in the names of Mrs. Sargent and that the statutory words ' either or survivor may draw ' appear only upon the pass book. Assuming, however, that this is a technical compliance with the requirements of the Banking Law, there will still remain the question, was it so intended by Miss McDonald? Her intention, as well as her knowledge and consent, must be derived from the check which she gave for the purpose of the transfer. The case is bare of other evidential facts upon the subject. The check is without ambiguity. She directed, not that her moneys should be deposited in form to be paid to either herself or Mrs. Sargent or the survivor of them, but only that they should be deposited to the *joint account,* as seems to have been done, of herself and Mrs. Sargent. The limitation of her direction could not be extended to either Mrs. Sargent or the bank. Presumptively she knew what the law was and limited the proposed deposit in the light of that knowledge. In the present state of the law, deposits may be made either jointly or in the form provided by the section of the Banking Law we have been considering. When made or consented to by the owner such deposit in form is absolutely conclusive of ownership in the survivor; when made jointly but *not in form* no such presumption exists. (*Hayes* v. *Claessens,* 189 App. Div. 449; *Heiner* v. *Greenwich Sav. Bank, supra.*) Joint deposits not in form of the statute are still presumed to have been made for convenience only and in the absence of proof rebutting that presumption no title or ownership vests in the survivor. Miss McDonald did not direct this money to be deposited according to the form of the statute but only in joint account; no effort whatever is made to take that deposit away from the consequent presumption that it was made only for convenience and it follows that ownership of any portion thereof not expended for her benefit is still in her estate."

In determining the questions involved in this action it is unnecessary to consider those cases which construe only the effect of the " conclusive presumption " provision of section 249 of the Banking Law of 1914, as the statute applicable here is section 198, in which that language does not appear. From a consideration of all the cases, it would appear that these rules are to be followed in determining the effect of this statute: *First.* The statute does not apply unless the account is opened in substantially, if not precisely, the form mentioned in the statute. *Second.* When the account is in the statutory form, that single fact, unexplained

by other competent evidence, fixes the respective rights of the depositors named, as joint owners of the property, with all the incidents attaching to such ownership, including the right of survivorship. *Third.* That as between the parties themselves, that presumption may be rebutted by proof of the actual agreement as to the ownership of the fund. *Fourth.* That when the fund deposited was originally the property of but one of the depositors, it must appear that the account was opened in the statutory form with the knowledge and consent, express or implied, of the owner of the fund. *Fifth.* That when the account, although in form joint, is not in the statutory form, the question of its ownership is to be determined according to common-law principles, without regard to the statute.

In this case the account is in the statutory form. Therefore, the presumption is that Mrs. Brady and Mrs. Havens were joint owners thereof, and upon the death of Mrs. Brady, which occurred December 26, 1924, the defendant Mrs. Havens, as the survivor, became the sole owner thereof. The burden of proof is upon the plaintiffs to rebut that presumption, and certain evidence has been given from which the court is asked to infer that Mrs. Brady, in making the deposit in the form which she did, did not intend " to effect that legal result which her acts naturally and presumptively did accomplish," to wit, the transfer of the title to this fund, which had previously been in herself individually, to a joint tenancy of herself and Mrs. Havens.

The facts are undisputed, and are as follows: Since 1912 Mrs. Mary J. Brady had an account individually in the City Bank Trust Company. On April 14, 1924, she was staying at the home of Mrs. Havens in Frankfort, N. Y., and from there she wrote a letter to Mr. Hancock, the attorney and a director of the bank and also a friend of the Brady family, as follows:

" I wish to make my nephew's wife Mrs. Carrie Havens jointly interested with me in my account in the City Bank Trust Co. I am quite ill and cannot come to Syracuse. I should like this done *soon* but do not wish to lose any interest which might accumulate between now and July first. As the money will not be withdrawn from the bank I cannot see as it would make any difference whether it was done now or July first. You will advise me. Mrs. Havens can go to Syracuse any time to suit your convenience to meet you at the bank. Her daughter Mrs. Doust of Syracuse will go with her to identify her. Hope you can fix this up for me. An early reply will be appreciated by me.

                    " Sincerely,
                         " MARY J. BRADY."

On April 19, 1924, Mrs. Brady wrote a letter to the City Bank Trust Company as follows:

" I wrote Mr. Hancock last Monday in regard to making my nephew's wife, Mrs. Carrie Havens jointly interested in the money that is in your bank. I am too ill to come to Syracuse, and wish to know if it can be done without my presence, and if done now, it cannot disturb the interest until July 1, as the money need not be withdrawn from the bank. Mrs. Havens can come any time, and as I have decided to do this, the sooner it is done the better. Mrs. Havens' daughter, Mrs. Doust, of Syracuse will come with her to identify her. You will please advise me at your earliest convenience as to the things I want to know.

" Sincerely,<br>" MARY J. BRADY."

Upon receipt of this letter the bank wrote Mrs. Brady on April 22, 1924, as follows:

" We are herewith inclosing two blank joint account signature cards for you and Mrs. Carrie Havens to sign in order to make your personal account at this bank a joint account with Mrs. Carrie Havens. Both yourself and Mrs. Havens must sign each of the cards. When this is done, kindly return the cards and your pass book to us and we will change the account."

The cards, which were inclosed, were signed by Mrs. Brady and Mrs. Havens and returned to the bank. They read as follows:

" Joint Account.

" To City Bank Trust Company, Syracuse, N. Y.

" The undersigned are opening a joint account with your bank under the title of Mrs. Mary J. Brady or Mrs. Carrie B. Havens, either or survivor, or survivors to draw. We hereby jointly and severally agree that the funds deposited in this account shall be drawn against by either the above named, or any survivor or survivors of them. Each of the above named has hereto affixed his own autograph signature in acknowledgment of this agreement and further authorizes City Bank Trust Company to accept these as specimen signatures to be used in drawing against the above described account. Syracuse, N. Y., April 25, 1924.

" Autograph signature            Address
" Mrs. Mary J. Brady            503 Litchfield St.
" Mrs. Carrie B. Havens          Frankfort, N. Y."

Upon receipt of the signature cards, the bank opened the new account on April 25, 1924, and sent the pass book to Mrs. Brady, with a letter reading as follows:

" We are inclosing herewith new pass book made out to yourself

and Mrs. Carrie Havens, as you requested. We are also inclosing the old pass book which you may hold for a memorandum. The changing of this account from a personal to a joint account will not in any way affect your interest."

The account remained in this condition until August 7, 1924, when Mrs. Brady again wrote the bank as follows:

" A short time since I made my account a joint account with Mrs. Carrie Havens. ˙ I should like to ask if I can have the account in a Special Interest Account, as in that way no money can be drawn without the book and I shall keep the book. I have no reason to think that the money might be withdrawn from the bank without my knowledge. I was quite ill at the time I did this and did not think about having to take the book when the account was Special Interest, and hope it can be made so yet, as one never can tell what might happen. I should like an answer at your earliest convenience, and will take it as a favor if you put it in a plain envelope."

This letter the bank answered as follows, under date of August 8, 1924:

" We are in receipt of your letter wherein you request that we change the joint account which we now carry under ·the name of Mrs. Carrie Havens and Mrs. Mary J. Brady to a Special Interest Account. Your letter is not quite clear as to whether you wish this changed over in its present state or whether you wish the Special Interest Account to be merely an individual one, in your own name. If you wish the transfer to be made leaving the account as it is at present, it will be possible for us to transfer it without your check. If, however, you wish the special interest account to be in your name alone, you will kindly give us a check for the balance of your present joint account, and we will use this as your deposit to open the new account in our Special Interest Department. Upon receipt of your answer we will forward signature cards and pass book covering the new account. The present balance on the account is $4,997.55."

There is not in the record any direct answer to this letter, but there is a letter from Mrs. Brady to the bank, bearing date August 21, 1921, which is an evident error, reading as follows:

" On August 14, I wrote the bank asking if my account now a joint account with Mrs. Carrie Havens, could be made in a Special Interest account, and stated my reason for wishing it that way. I have a Special Interest Account in the Peoples Bk. of Buffalo, and think it best to have this that way if it can be done now. As I have not received an answer to my first letter, I should like an early reply to this one."

And a letter from the bank to Mrs. Brady dated August 15, 1925, reading as follows:

" In reply to your letter of recent date, we have transferred the account of Mrs. Mary J. Brady and Mrs. Carrie B. Havens to our Special Interest Dept. as per the enclosed charge slip. We are also enclosing herewith pass book on this new account, and signature cards which we would request that you kindly fill out and return to us at your earliest convenience. Trusting this will be satisfactory, we are. Very truly yours."

The charge slip inclosed read as follows:

" We charge your account today for balance of your checking account transferred to our Special Interest Dept. as per your recent request, four thousand nine hundred ninety seven and 55/100 dollars. City Bank Trust Company, Syracuse, N. Y. To Mrs. Mary J. Brady & Mrs. Carrie B. Havens, 503 Litchfield St., Frankfort, N. Y."

The signature cards were on pink paper and were in form precisely the same as those signed in April when the account was opened except that they are headed " Mrs. Mary J. Brady and Mrs. Carrie B. Havens, Joint Account," and the date is August 15, 1924. Those cards were signed by both Mrs. Brady and Mrs. Havens and returned to the bank, with a letter of Mrs. Brady dated August 18, 1924, reading as follows:

" Please find enclosed the cards signed by Mrs. Havens and myself. I am not sure that the colored card is signed right, if not please send another, and mark the place to be signed. I believe that changing this account does not make any difference with the interest, should like to be sure."

To this the bank replied:

" In reply to your letter of Aug. 18th, kindly be advised that no interest will be lost and that the cards were all in order."

Mrs. Brady at no time during this period or until her death called at the bank, the business all being done by the foregoing correspondence. She died in Los Angeles, Cal., where she was visiting a cousin December 26, 1924, leaving an estate of about $10,000 outside of this joint account. It is stipulated that from the time of opening the joint account in April, 1924, neither Mrs. Brady nor Mrs. Havens drew any money from said account, and that there were no deposits therein, and no credits thereto except interest; that the account consisted entirely of money furnished by Mrs. Brady and interest thereon; that Mrs. Brady had the pass book for said deposit with her in California at the time of her death, and that neither the pass book of the special interest account nor the pass book of the joint account of Mrs. Brady and Mrs. Havens

opened in April, 1924, were ever in the possession of Mrs. Havens; that Mrs. Havens is not a blood relation of Mrs. Brady, and is only related to her as the wife of a nephew, and that Mrs. Brady owed her no money.

From this evidence I conclude that it was the intention of Mrs. Brady at the time she opened the account in the two names in April, 1924, and at the time she transferred it into a special interest account in August, 1924, to create in herself and Mrs. Havens a joint tenancy in the fund, and that she expressed that intention in clear and unmistakable language; that at the time she appreciated the legal effect of her act, that Mrs. Havens would have equal interest in the fund with her during the joint lives, including the right to withdraw the same from the bank, and that upon the death of either the survivor would be the sole owner thereof. That such was her intention is further evidenced by the declaration made by her, while on her trip to California and while there to the effect that it was unnecessary for her to make a will, that she had her affairs so fixed that whoever had the distribution of it would be unable to cheat any one out of a penny, and that Mrs. Havens would have what was in the joint account in case of her death.

Judgment is, therefore, awarded in favor of the defendant Havens, adjudging that she is the owner of the account in question, and directing the payment thereof to her by the bank.

Findings may be prepared according to this memorandum, and if not agreed upon, may be settled upon two days' notice.