In the Matter of the Judicial Settlement of the Estate of GEORGE SANDERS, Deceased.

Surrogate's Court, Clinton County, June 22, 1927.

**Executors and administrators — accounting — proceeding to determine title to savings bank account — account, as evidenced by bank book, was in name of decedent and his wife "payable to either party or survivor "— evidence shows decedent intended wife should be entitled to fund if she survived him — account vested in widow on decedent's death — words written in bank book " this book is payable to " decedent's wife, by bank cashier after conversation with decedent, substantially comply with Banking Law, § 148.**

In this proceeding to determine the title to a savings bank account in the name of decedent and his wife, the administratrix herein, " payable to either party or survivor," evidence showing that decedent intended that his wife should be entitled to all of the account, if she survived him and that during his lifetime either of them could draw upon the account, warrants a finding that, upon decedent's death, the title to the bank book and the deposit evidenced therein, vested solely in decedent's wife, and consequently it is not necessary for her to account for the funds as part of the assets of decedent's estate.

The words " this book is payable to " decedent's wife, also her husband, naming them, written on the inside of the bank book by the cashier of the bank, in which the fund was deposited, after a conversation with decedent a day prior to his death, constitute a substantial compliance with section 148 of the Banking Law, at least to the extent of indicating the apparent intent of decedent.

PROCEEDING on the judicial settlement of the accounts of the administratrix, regarding the title to a bank account in the name of the decedent and the administratrix.

*Booth & Booth* [*Robert C. Booth* of counsel], for the administratrix Mina J. Sanders.

*Horatio W. Thomas,* for the contestants Charles H. Sanders and others.

HARRINGTON, S.   By a stipulation filed by the attorneys for the respective parties herein, all objections to the accounts of the administratrix as filed were withdrawn, except the objection to the failure of the administratrix to include as part of the assets of the estate the sum of $3,963.54, deposited in an interest account, No. 1263, with the Bank of Au Sable Forks, a State bank at Au Sable Forks, N. Y., in the name of " Geo. A. Sanders or Mrs. Geo. A. Sanders, payable to either party or survivor." The parties mentioned in said bank account are respectively the decedent and the administratrix herein.

The evidence indicates that from November 20, 1915, to January 12, 1926, the bank account in question was in the name of " Geo. A.

Sanders" only. On the latter date the cashier of the Bank of Au Sable Forks, Mr. Victor K. Moore, called upon Mr. Sanders at his home, and at his request. The testimony indicates that Mr. Sanders was a very sick man upon this occasion, suffering from typhoid fever, but there is no evidence to indicate that he was in anywise incompetent to understand the nature of the business being transacted by him. In fact, the testimony of his attending physician who was present on this occasion, was that there was nothing in the actions or conversation had by him with Mr. Sanders on that date to indicate that he was not in complete control of his mental faculties.

After explaining to Mr. Sanders that he had come there at his request, Mr. Moore asked him the nature of the business transaction which he wished to discuss with him. . Mr. Sanders then indicated to Mrs. Sanders that he desired to have brought to him the bank book in question. The same was so brought to him, and he then said to Mr. Moore in substance as follows: " I am a very sick man; I hope to get well, but I would like this book fixed so that the deposit can stand in my wife's name — in other words, I want to make this transfer over to her." Mr. Moore then explained to him the effect of transferring this bank account as he believed Mr. Sanders wished it to be transferred, namely, that by making it a joint account it would be payable to either or the survivor of either, either one of them could withdraw any part or all of the balance in the bank book during their lifetime, and upon the death of either the survivor could withdraw the entire balance. He then asked Mr. Sanders if that was the way he wanted the account transferred, and Mr. Sanders replied in the affirmative. Mr. Moore's testimony was to the effect that he was very positive that he had explained the matter two or three times to Mr. Sanders, to be sure that he understood the nature of the transaction, and was satisfied that Mr. Sanders did understand it and requested that it be so accomplished. Mr. Moore then wrote on the inside page of the bank book the following:

" This book is payable to Mrs. Geo. Sanders also
Jany 12 — 1926
" Wit
     " V. K. MOORE "

GEO <sup>His</sup> SANDERS, <sub>Mk</sub>

Mr. Moore then testified as follows: " That transaction was all done as I held the book in my hand and sat by his bedside. After he had made that transfer, he said to me further ' As soon as I get well, I would like you to come back here because I wish my farm to be disposed of and the effects of the farm to be disposed of other-

wise, but this in the bank book is for Mina.' I closed up the transaction — after I had written what he asked me to, I told him what I had written; he made an X and he touched the pen and I wrote his name as it appears there."

Mr. Moore further testified that he explained to Mr. Sanders that at the bank they had a rubber stamp which the bank officials used on such accounts, marking such books "Payable to either party or survivor," and that he again explained to Mr. Sanders the legal effect of an account in such form. When the transaction was completed, Mr. Moore returned the book to Mrs. Sanders at the request of Mr. Sanders. On the same day it appears that Mr. Moore placed this stamp above referred to on the bank book and made the same entry on the ledger account at the bank.

In the forenoon of January 13, 1926, in a conversation between Mr. Sanders and Mr. Milton Hamilton, who was assisting in caring for Mr. Sanders, Mr. Sanders said to Mr. Hamilton: " I have made over my bank account to my wife, Mina." Mr. Sanders died that afternoon.

On January 19, 1926, Mrs. Sanders withdrew the said sum of $3,963.54 from this account and deposited it in the same bank to the credit of herself alone.

As above indicated, it appears that Mr. Sanders did not actually sign the memorandum written by Mr. Moore in the bank book, for there is no writing therein indicative of the mark of the decedent. Presumably, Mr. Sanders may have touched the pen, but the scrivener omitted to make the mark. However, there is nothing in the rules of this bank as printed in the bank book in question, nor is there any statutory requirement that the order of a depositor in such a bank account, transferring the same to a joint account, be written. Undoubtedly written orders duly executed by the depositor should be commended, as such practice would greatly assist in establishing the intent of the depositor. But when the proof is as positive as it is in this case with reference to the direction of the depositor as to the manner desired of transferring his bank account, I believe such proof is sufficient to consummate the transfer, without the necessity of a duly executed order to this effect by the depositor, in the absence of any banking rule or statute requiring such a written order.

What then is the legal effect of the transfer of this bank account as thus made? The statutory requirements with reference to the form of joint bank accounts as applicable to the case in question are to be found in section 148 of the Banking Law, which among other things provides as follows: " When a deposit shall have been made by any person in the name of such depositor and another

person and in form to be paid to either, or the survivor of them, such deposit thereupon and any additions thereto made, by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to either during the lifetime of both, or to the survivor after the death of one of them; and such payment and the receipt or acquittance of one to whom such payment is made, shall be a valid and sufficient release and discharge to said bank, for all payments made on account of such deposit prior to the receipt by said bank of notice in writing signed by any one of such joint tenants, not to pay such deposit in accordance with the terms thereof."

While the words used by the cashier of the bank for the purpose of making this account payable to either Mr. Sanders or his wife, or the survivor of them, do not conform exactly to the wording prescribed by the statute, it would seem that they constitute a substantial compliance therewith, at least to the extent of indicating the apparent intent of the decedent. Mr. Moore testified that the stamp used by this bank with the words thereon, " Payable to either party or the survivor," was so used only when it was the intention of the parties that the account should be payable to either of them or the survivor of them. No evidence was offered by the contestants to indicate that Mr. Sanders did not intend the account to be as above mentioned. The evidence offered by the petitioner conclusively establishes that Mr. Sanders did intend that his wife should be entitled to all of this account if she survived him, and that during his life either of them could draw upon the account. His conversation on the day of his death with Mr. Hamilton, in which he told him that he had made over his account to his wife, further indicates his intention in this matter. This case is, therefore, not like many cases of record, especially *Matter of Fonda* (206 App. Div. 61) and *Hayes* v. *Claessens* (189 id. 449; 202 id. 762; mod., 234 N. Y. 230), where there was no evidence, outside of the form of the account itself, to indicate the intent of the depositor, and the form of the account itself was not such as to comply with the statutory form above mentioned. In this case we not only have the form of the account substantially in the same form as prescribed by the statute, but we have uncontradicted evidence that the actual intent of the decedent in making the transfer as mentioned was for the purpose of making Mrs. Sanders the sole owner thereof if she should survive the decedent. I believe the evidence offered by the administratrix is, therefore, sufficient to establish title in her to the bank account in question. (*Matter of*

*Marshall* v. *Marshall*, 217 App. Div. 229, 232; *Havens* v. *Havens*, 126 Misc. 155; affd., without opinion, 215 App. Div. 756.)

I, therefore, determine that the title to the bank book in question and the deposits evidenced thereby was upon the death of the decedent the sole property of the administratrix herein, and that it is not necessary for her to account for the same as a part of the assets of the estate of the decedent in this proceeding. Prepare decree accordingly.