BENJAMIN D. PENDLEY, Plaintiff, *v.* MAUDE PENDLEY, PAWLING SAVINGS BANK, PUTNAM COUNTY SAVINGS BANK OF BREWSTER, and J. BENNETT SOUTHARD, JR., as Committee of the Person and Estate of MAUDE PENDLEY, Defendants.

Supreme Court, Dutchess County, June 30, 1937.

*Ryder & Donohoe* [*John P. Donohoe* of counsel], for the plaintiff.

*Roosa & Southard* [*J. Bennett Southard, Jr.,* of counsel], for Maude Pendley and J. Bennett Southard, Jr., as committee of the person and property of Maude Pendley and special guardian *ad litem* for Maude Pendley.

*Blessing & Murphy,* for the Pawling Savings Bank.

*F. Leon Shelp,* for the Putnam County Savings Bank of Brewster.

MORSCHAUSER, Official Referee. The issues herein were on the 19th day of May, 1937, referred to me to hear and determine the same by Mr. Justice PATTERSON upon the consent of respective counsel. The trial of said issues was had at Carmel Court House, Putnam county, on June 25, 1937. At the conclusion of the trial at Carmel I adjourned to the Harlem Valley State Hospital for the Insane at Wingdale, N. Y., where the incompetent, Maude Pendley, was examined.

Benjamin D. Pendley, the plaintiff in this action, is the husband of Maude Pendley, one of the defendants. The Pendleys were married at Ludingtonville, N. Y., on November 26, 1905, and lived as man and wife continuously from that date until March, 1934.

During the month of March, 1934, Mrs. Pendley was committed to the Harlem Valley State Hospital at Wingdale, N. Y. She has been an inmate of that institution since that time. On or about June 8, 1935, Mrs. Pendley was legally adjudicated an incompetent, and the defendant J. Bennett Southard, Jr., was appointed the committee of her person and estate.

The plaintiff in this action, Benjamin D. Pendley, on April 5, 1912, started a savings account with the defendant Pawling Savings Bank. This account was in his own name and was made up of deposits of his own money. From time to time for the next ten years, or until October 10, 1922, he had deposited additional sums of his own money in the defendant bank. Then on October 10, 1922, the name of the account was changed from that of Benjamin D. Pendley, individually, to Benjamin D. Pendley and Maude Pendley, payable to either or to the survivor. Under that name additional sums of money were deposited to the credit of the account.

The money on deposit in the Putnam County Savings Bank of Brewster, New York, was deposited there by the father-in-law of the plaintiff. The plaintiff had loaned the father-in-law fifty dollars. The father-in-law repaid this money by depositing the money loaned in the bank in the joint names of the plaintiff and his wife.

All money deposited in these bank accounts whether credited to Benjamin D. Pendley individually or to the joint account was earned by the plaintiff. Mrs. Pendley never had an independent income nor had she received any money as a gift or legacy in all these years to deposit as her own. Mrs. Pendley did from time to time deposit money in the bank, but in each case it was the money earned by the plaintiff, which he considered his own and over which he intended to retain full control.

When Mrs. Pendley was adjudicated incompetent the plaintiff secured the bank books but was unable to withdraw any money

from the defendant bank. Under section 24-a of the Mental Hygiene Law the plaintiff is liable to the State of New York for the maintenance of Mrs. Pendley at the hospital. The Department of Mental Hygiene pressed Mr. Pendley to pay this charge, which amounts to several hundred dollars, but he was unable to do so since all his funds were tied up in the defendant banks.

This action was then brought in the Supreme Court to compel the defendants to pay over to the plaintiff the money on deposit in the defendant banks. All the parties including the incompetent have been duly served. The committee is the only party defendant who has served an answer. The defendant Pawling Savings Bank merely appeared in the action. No answer was served. The Putnam County Savings Bank took the position of a stakeholder and offered to pay the money into court.

The precise question that confronts me in this case is whether Mrs. Pendley has any vested interest in the money on deposit with the defendant banks or is her interest limited to that of a right of survivorship. Although there has been a great deal of litigation over similar bank deposits there has been no case decided in the State on the same set of facts.

Under the common law the plaintiff would have had no difficulty in this matter, for a deposit to the joint account of himself and his wife would have been insufficient to establish a gift by the plaintiff to the defendant or an interest in the funds deposited to take effect either in the present or in the future. (*Beaver* v. *Beaver*, 117 N. Y. 421; *Matter of Bolin*, 136 id. 177; *Kelly* v. *Beers*, 194 id. 49.) In *Beaver* v. *Beaver* it was held that a deposit made by the father to the individual credit of his son did not operate to pass title to the son. The court wrote: " We cannot close our eyes to the well-known practice of persons depositing in savings banks money to the credit of real or fictitious persons, with no intention of divesting themselves of ownership." In *Kelly* v. *Beers* the deposit was made to " Kate V. Beers or Sarah E. Kelly, her daughter, or the survivor of them." It was said that the form of the deposit alone, under the authorities, would not be sufficient to constitute the making of a gift.

However, the enactment of the Banking Law by the Legislature changed the law with respect to joint bank deposits. Section 249, as presently amended, is that part of the statute which changed the above common-law rule. This section reads as follows:

" § 249 * * *. 3. When a deposit shall be made by any person in the names of such depositor and another person and in form to be paid to either or the survivor of them, such deposit and any additions thereto made by either of such persons after

the making thereof, shall become the property of such persons as joint tenants, and the same together with all dividends thereon shall be held for the exclusive use of such persons and may be paid to either during the lifetime of both or to the survivor after the death of one of them, and such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to such savings bank for all payments made on account of such deposit prior to the receipt by such savings bank of notice in writing not to pay such deposit in accordance with the terms thereof. The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence in any action or proceeding to which either such savings bank or the surviving depositor is a party of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor."

The leading case in New York on joint bank accounts since the enactment of section 249 is *Moskowitz* v. *Marrow* (251 N. Y. 380). The facts in that case are somewhat analogous to those in the instant action. In *Moskowitz* v. *Marrow*, Fannie Mannheimer was the owner of substantial deposits credited to her individual name in several banks. On April 28, 1924, each of the banks, at the express direction of Fannie Mannheimer made a transfer of the fund deposited with it to a new account wherein the deposit was credited jointly to Fannie Mannheimer and Pearl Harris, her granddaughter, payable to either or to the survivor. The money was so held by the banks for some months. Thereafter, the Mannheimer woman withdrew the money and redeposited to her own credit. Subsequently the joint accounts were re-established. When Fannie Mannheimer died her executors claimed the bank deposits. It was held by the court that the survivor had the right to the deposits.

We are concerned with only those rulings of the court which show the nature of the tenancy created by the joint deposit. In the first opinion written by KELLOGG, J., it was held that the making of the deposit created a rebuttable presumption that a joint tenancy was created, which presumption became conclusive only upon the death of one of the parties. Judge CARDOZO in a concurrent opinion, wrote (at p. 396): " The statute, as I view it, does not mean that between the persons named as depositors a joint tenancy ensues at once and automatically, as an irrebuttable presumption, with the result that neither will be permitted even during the joint lives to prove against the other that the deposit was made with a contrary intention. * * * For the depositors themselves, the form is not conclusive in any contest during their

joint lives as to the title to the moneys nor conclusive after the death of either to the money then withdrawn."

It was further held that there was nothing in the statute that makes the form of the deposit conclusive in any action to which either depositor is a party. It is to be conclusive evidence only in an action or proceeding in which the bank or the surviving depositor is a party. Judge CARDOZO (at p. 397) further wrote:

" A reading of the statute that would make the presumption irrebuttable except within these limits would do violence to intention and foster litigation. It would do violence to intention, for those who open such accounts have seldom any thought of restricting their enjoyment of the fund, their right to draw and spend by the shackles of a formula (Cf. *Beaver* v. *Beaver*, 117 N. Y. 421). * * * An irrebuttable presumption would close the door to testimony direct or circumstantial, that in opening the deposit the incidents of a joint tenancy had been varied by agreement. * * *

" Bank accounts in this form are opened not infrequently by the simple and the humble. The last thing that was in view was to encompass them with new embarrassments, to penalize ignorance. * * * But except after death, or in circumstances where prejudice would result to a bank acting without written notice of a countervailing interest, the true agreement may be proved, though in proving it there is a departure from the terms of the presumption."

In the instant case the money deposited belonged to the plaintiff. In fact for ten years the account was in his individual name. Now he contends that his intention was to bestow on Maude Pendley a right of survivorship only.

A case which bears out his right to show this is *Scanlan* v. *Meehan* (216 App. Div. 591). In that action, commenced by plaintiff's testator to recover from the defendant money he deposited in bank in the joint names of the plaintiff's testator and the defendant, either or survivor to draw, which money was subsequently withdrawn by the defendant, it was held that the evidence shows that the deposit was made by plaintiff's testator in that particular form for convenience only and not for the purpose of making a gift to the defendant, and any presumption that may arise under section 249 of the Banking Law as between the parties themselves by reason of the form of deposit is not conclusive as to the ownership of the fund. The fact that the plaintiff died pending trial of the action did not change the cause of action, the court writing: " We are of the opinion that as between the parties themselves, the presumption, if any, arising from the making of the deposit in the

form mentioned is not conclusive as to the ownership of the fund; and that the death of Lane after the commencement of the action in no wise changed the cause of action."

The Pendleys are in the position of the plaintiff and defendant in the *Scanlan* case. Benjamin D. Pendley contended that he permitted the change in the form of the account simply to confer a right of survivorship on his wife and not to make a gift of any money on deposit during his lifetime.

The cases hold that a husband who puts the title to a chose in action in the name of himself and his wife jointly does not create a joint tenancy in the strict sense. Consequently, when Pendley deposited the money in the joint name of himself and wife, such a transfer possessed all the essential qualities of a gift *causa mortis* and was revocable by the husband before his death. (*West* v. *McCullough*, 123 App. Div. 846; affd., 194 N. Y. 518.) The intention of the husband is the thing to be looked for. When he takes the title out of his own name and shares it with his wife, it has been said that this evidences an intention that she shall take by survivorship. (*Matter of Kennedy*, 186 App. Div. 188.)

In *Havens* v. *Havens* (126 Misc. 155) a long opinion was written by CHENEY, J., which covered the history of joint account litigation very thoroughly. As this case was between a surviving depositor and the representatives of the other depositor, the principal ruling of the case does not control our case. However (at p. 159), the court did say: " It thus appears that the courts had decided that in all these different forms of deposit, the decisive fact of the transfer of title was the intent of the depositor; that such intent was not to be determined from the form of the deposit alone, but it still remained a question of fact to be decided in each case from all the evidence upon that subject produced at the trial."

The position of the plaintiff herein is that he owned the money on deposit prior to October 10, 1922, and that the creation of a " joint account " on that date did not divest him of any right or title to the money. Mrs. Pendley was merely given the right of survivorship.

Upon the authorities and the evidence in the case which was in a great measure corroborated by my examination of the incompetent at the hospital, I find that the money deposited in the defendant banks is the property of the plaintiff.

Present findings accordingly.